EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ MÉNDEZ, acusado y apelante.

Núm. 11989.—*Sometido:* Mayo 1, 1947. *Resuelto:* Junio 27, 1947.

*E. H. F. Dottin,* abogado del apelante; *Hon. Procurador General Luis Negrón Fernández, y Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Irma Santiago formuló denuncia contra José Méndez, en la Corte Municipal de San Juan, por abandono de menores, alegando que el acusado era el padre natural de Luz Selenia Santiago, su hija. Celebrado el juicio se dictó sentencia en contra del acusado, y éste apeló para ante la Corte de Distrito, la cual le declaró culpable y le condenó a sufrir tres meses de cárcel, disponiéndose que la sentencia quedaría suspendida mientras el acusado pasase la suma de $20 semanales para la alimentación de su hija. No conforme con esta sentencia, el acusado estableció recurso de apelación para ante este Tribunal el 31 de enero de 1946. El 3 de junio de 1946 y estando pendiente la aprobación de la transcripción de evidencia, el apelante presentó una moción de nuevo juicio ante la corte de distrito, alegando que la sentencia había sido obtenida por medio del perjurio y del fraude de la de-

nunciante, Irma Santiago, y de su padre de crianza Sergio Gálvez Díaz y como resultado de la confabulación de estos dos con los testigos Arcilia Vargas de Juarbe, Luz María Rodríguez, Sixto Figueroa Martínez y Natalio Robles Córdova. La corte inferior declaró sin lugar la moción de nuevo juicio por que ''entendía no tener jurisdicción, ya que, una vez apelado el caso para ante el Tribunal Supremo, la Corte de Distrito de San Juan perdía su jurisdicción,'' y además, porque ''si se anula la sentencia dictada para dictar otra, es necesario la celebración de otro juicio y las razones aducidas por el acusado para que se anule la sentencia son las mismas razones que el estatuto contempla para la concesión de un nuevo juicio, a saber: prueba descubierta con posterioridad a la celebración del juicio.'' De esta resolución, que denegó la moción de nuevo juicio, apela también el acusado.

■ No creemos necesario hacer un resumen de lo declarado por cada uno de los testigos presentados por el Fiscal y por la defensa. La evidencia, considerada en conjunto, es contradictoria. La corte inferior resolvió el conflicto dando entero crédito a la prueba de cargo. Siendo ésta suficiente para justificar la sentencia y no habiéndose demostrado la existencia de pasión, prejuicio o parcialidad por parte del juez sentenciador al apreciar dicha prueba, no se ha cometido el error señalado. *Pueblo* v. *Bernabe,* 63 D.P.R. 400.

■ En el segundo y tercer señalamientos el acusado alega que se cometió error, primero, al admitir como prueba un documento que se decía título de compra de una casa, escrita de puño y letra de un individuo que no compareció a declarar en juicio, siendo las firmas en dicho papel hechas por él mismo; y, segundo, al permitir que se comparara la fisonomía de una niña de tan poca edad con la del acusado, para demostrar su parecido.

Durante la celebración del juicio, fué admitido en evidencia un documento escrito por Juan Juarbe, el cual representaba la transacción llevada a cabo por Méndez y Arcilia Vargas de Juarbe en la compraventa de una casa. Dicho documento,

según aparece de la prueba de cargo, fué escrito en presencia de Méndez, Arcilia Vargas, Irma Santiago y de los testigos Sixto Figueroa Martínez y Natalio Robles Córdova, quienes firmaron dicho documento. Hubo suficiente prueba adicional que demostraba la compra de una casa por el acusado para regalársela a Irma Santiago. Esta cuestión ha sido resuelta por este Tribunal en el caso de *Pueblo* v. *Avilés,* 66 D.P.R. 290, donde resolvimos que "no se cometió el error señalado y en cuanto al segundo, aceptando sin resolverlo que la corte errara al admitir en evidencia las supuestas cartas del acusado, dicho error no fué perjudicial pues hubo amplia prueba adicional, a la cual la corte dió crédito, que tendía a probar los mismos hechos a que se referían las cartas, es decir, las relaciones existentes entre el acusado y la denunciante y sus hijos."

En cuanto a la segunda parte de este señalamiento, tampoco tiene razón el acusado apelante. La prueba de cargo demostró ampliamente que el acusado tuvo relaciones íntimas con la madre de la menor comenzando el 6 de octubre de 1944 y como consecuencia de estas relaciones nació la niña Luz Selenia Santiago el día 30 de junio de 1945, o sea, nueve meses menos seis días a partir de la fecha en que comenzaron las relaciones. Esta prueba fué creída por el juez inferior, el cual concluyó que Méndez es el padre natural de la niña antes mencionada. Siendo esto así, el hecho de que la corte permitiese que se comparara la fisonomía de la niña con la del acusado para demostrar su parecido, no le fué perjudicial al acusado apelante pues, como hemos dicho, hubo prueba, no del parecido entre la niña y el acusado meramente, sino de que éste era el padre natural de ella y así lo creyó la corte. Además, en el caso de *Pueblo* v. *Pérez,* 55 D.P.R. 677, en donde se consideró una cuestión similar a ésta, resolvimos que "la prueba del parecido o del no parecido es admisible en propios casos para ser apreciada por el juzgador—corte o jurado—como un elemento a considerar que no es por sí solo decisivo.

■ Como quinto señalamiento alega el acusado apelante que se cometió error al condenar al acusado a pasar a la niña Luz Selenia Santiago una pensión alimenticia de $20 semanales sin tener prueba alguna de las necesidades de la tal menor y a lo que podían montar razonablemente los alimentos de dicha menor. No tiene razón el acusado apelante. De acuerdo con lo dispuesto por el artículo 263 del Código Penal, edición de 1937, la corte tiene facultad para dejar en suspenso la ejecución de la sentencia bajo las condiciones que tenga a bien imponer para bienestar del niño. En el caso de autos, la corte le impuso al acusado tres meses de cárcel, pero suspendió dicha sentencia bajo la condición de que el acusado pasase a su hija natural Luz Selenia Santiago la cantidad de $20 semanales. Al suspender la sentencia bajo las condiciones ya mencionadas, la corte no hizo otra cosa que ejercer su discreción, según lo autoriza el artículo 263, supra. De la transcripción de evidencia surge que Méndez tiene un sueldo de $300 mensuales; que tiene propiedades inmuebles y además tiene intereses en una ferretería, lo que demuestra que el acusado está en posición de poder pasar a la niña la cantidad fijada por la corte. No se nos ha demostrado ni aparece del récord que la corte inferior abusara de su discreción al fijar la cantidad de $20 semanales y en ausencia de demostración a ese efecto entendemos que ejerció sus facultades discrecionales correctamente. No se ha cometido el error señalado.

■ En su segunda apelación alega el acusado apelante como único señalamiento, que la corte a quo erró al denegar la moción del acusado pidiendo se anule la sentencia que se dictó contra él.

El acusado apelante solicitó, con fecha 4 de junio de 1946, mediante moción de nuevo juicio, que se anulara y se dejara sin efecto la sentencia. Acompañaba a esta moción una declaración jurada de Irma Santiago en la cual Irma declaraba que había sido deshonrada el día 6 ó 7 de junio de 1944 por Pedro Rosado Ayala. Además, acompañaba a

la moción una certificación del Dr. Emilio Vadi fechada el 23 de junio de 1944, al efecto de que Irma Santiago había sido desflorada de tiempo no reciente. La corte inferior denegó la moción de nuevo juicio porque no tenía jurisdicción, ya que el caso estaba en apelación para ante este Tribunal desde enero 30 de 1946.

No procede la moción de nuevo juicio después de haberse dictado sentencia. El Código de Enjuiciamiento Criminal, edición de 1935, en su artículo 304, dispone:

"La instancia solicitando nuevo juicio deberá presentarse antes de dictarse la sentencia."

En este caso, la moción de nuevo juicio fué presentada tres meses después de haberse dictado sentencia, cuando ya era tarde. La moción fué correctamente denegada. A este respecto véanse: *People* v. *Smink*, 288 P. 873; *Ex parte Bathurst*, 277 P. 201, *People* v. *Egan*, 27 P.2d 765; *The United States of America* v. *William F. Smith, District Judge*, 331 U. S. 469, resuelto en junio 2, 1947.

*La sentencia de la corte inferior será confirmada.*

### EN MOCION DE RECONSIDERACION
Diciembre 3, 1947.

1. PADRES E HIJOS—ABANDONO DE MENORES—RESPONSABILIDAD CRIMINAL—ACUSACIÓN O DENUNCIA—PROCEDIMIENTO PRELIMINAR A LA INICIACIÓN DE LA DENUNCIA.—Una denuncia por abandono de menores bajo el artículo 263 del Código Penal, no necesita alegar que previo a la misma al acusado se le hizo un requerimiento formal en solicitud de alimentos y que él negó la paternidad.

2. ID.—ID.—ID.—JURISDICCIÓN DE LOS DELITOS.—El hecho de que una denuncia por abandono de menores bajo el artículo 263 del Código Penal alegue que el acusado negó la paternidad, informando una fecha posterior a la del supuesto abandono, no constituye un defecto jurisdiccional o falta de hechos constitutivos de delito.

3. ID.—ID.—EN GENERAL—ABANDONO DE MENORES COMO DELITO CONTINUO.—El delito de abandono de menores es uno continuo. La alegación de que el padre abandonó al menor en fecha anterior a la denuncia debe interpretarse como una al efecto de que el abandono continuó desde esa fecha anterior hasta la fecha de la denuncia.

4. ID.—ID.—RESPONSABILIDAD CRIMINAL—DEFENSAS EN GENERAL—INVESTIGACIÓN PRELIMINAR A LA INICIACIÓN DEL PROCESO.—En proceso por abandono de menores bajo el artículo 263 del Código Penal, el hecho de que no se cele-

brara la investigación preliminar relativa a la paternidad requerida por la Ley núm. 108 de 1940 (pág. 673) es una defensa que al acusado incumbe levantar y probar.

5. ID.—ID.—ID.—EDAD DEL MENOR.—En proceso por abandono de menores bajo el artículo 263 del Código Penal, el hecho de que el menor tenga más de 16 años de edad es cuestión de defensa para el acusado alegarla y probarla.

6. DERECHO PENAL—MOCIONES DE NUEVO JUICIO Y SOBRE SUSPENSIÓN DE SENTENCIA—MOCIONES DE NUEVO JUICIO—TIEMPO OPORTUNO PARA PRESENTARLAS—APELADO EL CASO.—La radicación de una moción solicitando nuevo juicio mientras la apelación del caso esté pendiente, es tardía.

7. ID.—APELACIÓN—PROCEDIMIENTOS PARA ELEVAR LA CAUSA Y EFECTO DE LOS MISMOS—FACULTADES Y PROCEDIMIENTOS EN LA CORTE INFERIOR—MODIFICACIÓN DE LA SENTENCIA.—La modificación de la sentencia por motivo de fraude no puede obtenerse de una corte inferior mientras el caso esté en apelación ante este Tribunal.

8. SENTENCIAS—REMEDIOS EN EQUIDAD—NATURALEZA DEL REMEDIO Y FUNDAMENTOS—FRAUDE, PERJURIO, COLUSIÓN U OTRA CONDUCTA IMPROPIA—FRAUDE AL OBTENER SENTENCIA.—Si una sentencia fué obtenida o no por fraude practicado sobre la corte sentenciadora y descubierto posteriormente es cuestión para determinarla esa corte y no la de apelación.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El acusado solicita la reconsideración de nuestra opinión y sentencia confirmando su condena por abandono de menores, ante, pág. 824. En reconsideración levanta dos cuestiones por primera vez, que pueden considerarse conjuntamente: (1) la corte municipal carecía de jurisdicción para conocer del caso; (2) la denuncia no aduce hechos constitutivos de delito.

La denuncia se formuló el *10 de octubre de 1945* por Irma Santiago, madre de la menor, e imputaba "que *en 30 de julio de 1945* . . . el referido acusado . . . allí y entonces, ilegal, voluntaria y maliciosamente . . . tiene en completo estado de abandono a su hija natural menor de edad llamada Luz Selenia, cuya paternidad su padre ha negado *en el día de hoy* . . .". (Bastardillas nuestras).

El apelante se basa en nuestros casos que resuelven que el mero abandono de un hijo menor ilegítimo, por sí sólo, no constituye delito bajo la Ley núm. 108, Leyes de Puerto Rico, 1940; que el requerimiento formal para que cumpla sus obligaciones con el menor es una condición precedente a la de-

nuncia por infracción a la Ley núm. 108; que la causa de acción surge al abandonarse el menor después de hacerse el requerimiento; y que la corte municipal carece de jurisdicción para conocer de un caso en el que no se ha hecho el requerimiento. *Pueblo* v. *Lamboy,* 59 D.P.R. 174; *Pueblo* v. *Olavarrieta,* 59 D.P.R. 736; *Pueblo* v. *Emanuelli,* 61 D.P.R. 209; *Pueblo* v. *Ramos,* 61 D.P.R. 333.

El argumento del acusado es técnico en extremo. Está predicado en el hecho de que después que la denuncia alega que se cometió el delito de abandono el 30 de julio de 1945, continúa alegando que no se negó la paternidad hasta el 10 de octubre de 1945, fecha de la denuncia. Arguye que el delito establecido en la Ley núm. 108, en su consecuencia, sólo se podía cometer después del 10 de octubre, y por ende, que la denuncia es fatalmente defectuosa ya que imputa únicamente el abandono en una fecha anterior, 30 de julio de 1945, y no abandono alguno después del 10 de octubre.

Quizá el apelante hubiera tenido derecho, previa solicitud, a un pliego de particulares sobre este punto. Pero nunca levantó esta cuestión en la corte municipal, en la de distrito o en este Tribunal, hasta que radicó su moción de reconsideración. Hemos resuelto en *Pueblo* v. *Emanuelli,* supra, pág. 211, que no es necesario alegar que se hizo el requerimiento formal en solicitud de alimentos y que el acusado negó la paternidad. En su consecuencia, si la denuncia nada hubiera dicho en cuanto a dicho requerimiento o en cuanto a la negativa de la paternidad, y hubiera simplemente alegado el abandono en julio, tal denuncia no hubiera estado sujeta a una moción para desestimar por falta de jurisdicción o por falta de hechos constitutivos de delito. Y si durante el juicio con motivo de dicha denuncia, la prueba demostró que el abandono ocurrió en octubre y no en julio, como se alegó en la misma, de ordinario el acusado no tendría motivo para quejarse. Véase *Pueblo* v. *Díaz,* 61 D.P.R. 696.

El hecho de que la denuncia en este caso, suscrita por un lego, innecesariamente alegara de modo afirmativo que el

acusado había negado la paternidad, informando una fecha posterior a la del supuesto abandono, no debe, según nuestro criterio, constituir un defecto jurisdiccional o falta de hechos constitutivos de delito. Parece ser materia de sentido común en esta clase de casos interpretar una alegación al efecto de que el padre había abandonado a su hija el 30 de julio de 1945, como una alegación de que el abandono había continuado hasta el 10 de octubre de 1945, fecha de la denuncia.

Bajo todas las circunstancias, somos de opinión que la denuncia puede razonablemente interpretarse en el sentido de que alega que el acusado ha dejado de mantener a su hija *desde* julio 30, 1945. Así interpretada, la denuncia expuso hechos constitutivos de delito y la corte municipal tenía jurisdicción para conocer del caso.

▮▮▮ Al impugnar la jurisdicción de la corte municipal, el apelante también sostiene: (1) el récord no demuestra que la vista sobre el requerimiento formal para alimentos fuera de hecho celebrada, que el acusado no compareciera a la misma o que negara la paternidad; (2) la denuncia no alega que la menor tuviera menos de 16 años. En cuanto al fundamento (1), como hemos visto en el caso de *Emanuelli* a la pág. 212, el no haberse llevado a cabo la investigación preliminar relativa a la paternidad "era una defensa que incumbía levantar y probar al acusado". El acusado ni alegó ni probó tal cosa. En cuanto al fundamento (2), creemos que es suficiente la alegación de que la niña era menor de edad. El que tuviera más de 16 años, cosa que no era cierta en este caso, es una cuestión de defensa.

▮▮▮ El acusado en su moción de reconsideración renueva la contención, ya considerada en nuestra opinión original, de que la corte inférior cometió error al declarar sin lugar la moción de nuevo juicio. La corte de distrito denegó dicha moción por el fundamento de que fué radicada mientras estaba pendiente la apelación ante este Tribunal. En nuestra opinión original sostuvimos la actuación de la corte de dis-

trito. El acusado no ataca dicho resultado, y una vez más queremos aclarar que es tardía la radicación de una moción solicitando nuevo juicio mientras la apelación esté pendiente.

█ Sin embargo, ahora el acusado sostiene que su moción no es una moción solicitando nuevo juicio, sino que más bien es una moción para dejar sin efecto la sentencia por haberse obtenido mediante fraude descubierto posteriormente. Arguye que la corte de distrito puede considerar tal moción, no obstante estar pendiente la apelación aquí envuelta. Se apoya el acusado en los casos de *Hazel-Atlas Co.* v. *Hartford Co.,* 322 U.S. 238; *Universal Oil Co.* v. *Root Rfg. Co.,* 328 U.S. 575, 580; y una manifestación en *United States* v. *Smith,* 331 U.S. 469, 475–6, nota 4, al efecto de que "desde luego, las cortes federales tienen poder para investigar el hecho de que una sentencia haya sido obtenida por fraude y hacer cualquier modificación necesaria, *en cualquier momento.*" (Bastardillas nuestras).

En ninguno de estos casos se trató, como en el presente, de obtener la modificación de la sentencia en una corte inferior mientras estaba pendiente la apelación en la corte superior. Creemos que al emplear la frase "en cualquier momento" en el caso de *Smith,* la Corte Suprema quizo decir que podía obtenerse la modificación en la corte inferior por motivo de fraude, aun después que la corte superior confirmara la sentencia. No estamos de acuerdo con el acusado en que esto puede hacerse mientras el caso esté en apelación ante este Tribunal. Sencillamente, la corte de distrito no tiene jurisdicción durante dicho período.(¹)

█ Declaramos sin lugar la solicitud del apelante para que esta Corte determine si la sentencia se obtuvo mediante fraude descubierto posteriormente. De haberse defraudado

---

(¹)No nos detenemos a determinar si este Tribunal tiene el poder y, en caso afirmativo, cuándo debe ejercitarlo, para devolver un caso a la corte de distrito mientras esté pendiente la apelación y antes de que ésta se haya resuelto, con el fin de que la corte de distrito pueda determinar si se le defraudó. El acusado no hizo esfuerzo alguno para que aquí se hiciera esto.

cualquier corte, lo fué la de distrito. En su consecuencia, dicha corte es la llamada a determinar la cuestión. *Hazel-Atlas Co.* v. *Hartford Co.,* supra, págs. 247–50.

Creemos propio indicar que aunque el acusado pudiera demostrar que la evidencia sobre la cual basa la imputación de fraude es recién descubierta,([2]) de tratar él luego, en la corte de distrito, de impugnar esta sentencia por fraudulenta, su tarea será muy ímproba. El Juez Black indica en su opinión a la pág. 245-6, que el caso de *Hazel-Atlas* "no es sencillamente un caso de una sentencia obtenida con la ayuda de un testigo quien, a base de evidencia recién descubierta, posiblemente pueda ser culpable de perjurio. Aquí . . . encontramos un plan deliberadamente trazado y ejecutado con cuidado para defraudar, no solamente la Oficina de Patentes, si que también la Corte de Circuito de Apelaciones." *Cf.* Moore y Rogers, *Federal Relief from Civil Judgments,* 55 *Yale L. J.* 623, especialmente las páginas 679–81, 691–92; *Restatement, Judgments,* secciones 118, 126(2)(*b*); *Laloma* v. *Fernández,* 61 D.P.R. 569, 573, y casos citados; *Hallett* v. *Slaughter,* 140 P.2d 3 (Calif., 1943); *Metzger* v. *Turner,* 158 P.2d. 701 (Okla., 1945); 31 *Calif. L. Rev.* 600, 603-4; 54 *Yale L. J.* 687; Regla 60(*b*), *Federal Rules of Civil Procedure,* según enmendadas, en 329 U.S. 847, 863-4.

*La moción de reconsideración será declarada sin lugar.*

---

([2])La moción del acusado está predicada en declaraciones juradas ante el fiscal por la madre y su padre de crianza, al efecto de que un tal Pedro Rosado Ayala, la había desflorado en junio de 1944, y en un certificado médico acreditativo de que para dicho mes ella ya estaba desflorada. Esto estaba en abierta contradicción con la declaración de ella durante el juicio de que fué desflorada por el acusado en octubre de 1944.

Independientemente de la cuestión de cuán material era este testimonio perjuro al punto aquí discutido, el acusado tendría que convecer a la corte de distrito de que no pudo haber descubierto esta evidencia mediante la diligencia razonable antes del juicio. Sobre este extremo, la corte de distrito deberá tener en mente que el contrainterrogatorio de la madre efectuado por el abogado del acusado en el juicio, indicó que el abogado tenía entonces alguna información que lo inducía a creer que la madre había estado viviendo con Rosado en junio de 1944.