EL PUEBLO DE PUERTO RICO, demandante y apelante, *v.* LUIS GERENA LÓPEZ, acusado y apelado.

Núm. 14722.—*Sometido:* Diciembre 1, 1950. *Resuelto:* Febrero 27, 1951.

Hon. *Procurador General Víctor Gutiérrez Franqui, (Vicente Géigel Polanco, Ex Procurador General,* en el alegato) y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados del apelante; *Baltasar Quiñones Elías, Ángel Cruz Cruz* y *Santos P. Amadeo,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Luis Gerena López fué acusado ante la Corte de Distrito de Aguadilla de un delito de tentativa para cometer violación en la persona de María Brunilda Soto, cometido según la acusación el 25 de junio de 1949. Celebrado juicio ante jurado fué declarado culpable de dicho delito el 12 de di-

ciembre de 1949 y sentenciado por la corte el 23 de diciembre de 1949 a cumplir de uno a dos años y medio de presidio. No apeló de la referida sentencia y empezó a cumplirla.

El 12 de enero de 1950 radicó, en el mismo caso criminal, una "Solicitud de Auto de *Coram Nobis*" en la cual, después de alegar los hechos anteriormente expuestos, alegó los siguientes:

"*Cuarto:* Que durante el proceso del peticionario el único testimonio que conectó al peticionario con el delito imputádole fué el de María B. Soto, la supuesta víctima.

"*Quinto:* Que allá por el 27 de diciembre de 1949 la testigo María B. Soto fué investigada por las autoridades federales por sospecharse que ella estaba violando las leyes postales de los EE. UU. enviando anónimos por correo supuestamente escritos por el peticionario y que en dicha investigación dicha María B. Soto declaró a las autoridades federales que su declaración incriminando al peticionario era completamente falsa y que había hecho tal declaración para vengarse del peticionario.

"*Sexto:* Que habiendo sido fraudulento y falso el testimonio dado por María B. Soto contra el aquí peticionario en el proceso que se llevó ante este Hon. Tribunal contra este peticionario, dicha falsedad, perjurio y fraude vició todo el procedimiento, y la sentencia dictada contra este peticionario por este Hon. Tribunal.

"*Séptimo:* Que de haberse conocido durante el proceso la falsedad del testimonio de María B. Soto, tanto este Hon. Tribunal como el jurado que conoció en el caso no hubieran condenado al peticionario, constituyendo, por lo tanto, el testimonio falso de María B. Soto un fraude a la administración de la justicia, haciendo por lo tanto ilegal el juicio y la condena del peticionario por habérsele privado del derecho de un juicio imparcial según lo requiere el artículo 2 del Acta Orgánica de Puerto Rico y la jurisprudencia del Tribunal Supremo de los Estados Unidos y de las cortes estatales."

En su consecuencia solicitó se le diera una oportunidad de probar estas alegaciones y que de ser ciertas se declararan nulos y sin valor alguno el proceso y la sentencia dictada en su contra, ordenándose su inmediata excarcelación.

Contra esta solicitud el fiscal interpuso excepción previa alegando que el llamado remedio de "Auto de Coram Nobis" no está reconocido por la legislación de Puerto Rico y aun cuando lo estuviese la solicitud debía desestimarse por no haberse acompañado a la misma declaraciones juradas para sostenerla. Al mismo tiempo el fiscal radicó una contestación aceptando, los hechos alegados en la solicitud que se refieren a la acusación, veredicto del jurado y sentencia dictada por la corte en el caso de tentativa para cometer violación y negando todos los demás hechos alegados.

La corte celebró una vista y argumentada la cuestión legal planteada por el fiscal, la resolvió en la siguiente forma:

"Resolviendo la cuestión, la Corte entiende que si bien esta petición del acusado se ha titulado "Auto de *Coram Nobis*", como decía el compañero Amadeo, el peticionario lo que pide es que se haga justicia substancial. En derecho el nombre no hace la cosa y si se alegan ciertos hechos y se solicita remedio a determinada situación los tribunales deben conocer de la prueba que apoye los mismos, aquilatar ésta y luego resolver, tratando siempre de impartir la mejor justicia. La Corte entiende que ésta es una petición para dejar sin efecto una sentencia que se alega bajo juramento que fué obtenida fraudulentamente. El Tribunal toma conocimiento judicial del caso criminal 11,367 de esta Corte, en el cual el aquí peticionario fué juzgado y sentenciado por un delito de tentativa de violación. Se declara sin lugar la oposición del Fiscal, y está la Corte en condiciones de oír la prueba que tenga a bien ofrecer el peticionario en apoyo de su solicitud, así como prueba en contrario de El Pueblo."

Presentó entonces el peticionario prueba testifical consistente en la declaración de Harry Stolberg, Inspector de Correos, y documental consistente en una declaración jurada prestada por María Brunilda Soto ante el mencionado inspector el día 29 de diciembre de 1949. El fiscal presentó un certificado médico expedido por el Dr. José D. Montenegro el 31 de diciembre de 1949 y sometido el caso, la corte inferior dictó una extensa resolución el 2 de marzo de 1950, cuya parte dispositiva dice así:

"Por las razones antes expuestas, y entendiendo este Tribunal que la prueba de este caso ha demostrado fuera de toda duda que el acusado Luis Gerena López está encarcelado a virtud de una sentencia basada en fraude que fuera descubierto posteriormente, y que el acusado no pudo descubrir antes del juicio a pesar de su diligencia, la Corte cumpliendo con los altos fines de la justicia, decreta dejar y al efecto deja, sin efecto ni valor alguno el veredicto del jurado declarando a este acusado culpable de un delito de Tentativa de Violación en la persona de María Brunilda Soto, así como la sentencia dictada en su contra en 23 de diciembre de 1949, decretando su nulidad, y consecuentemente ordenando la excarcelación de éste."

Solicitada y denegada su reconsideración, amparándose en el inciso 5 del artículo 348 del Código de Enjuiciamiento Criminal, ed. de 1935,(1) el fiscal apeló y en este recurso sostiene que la corte inferior erró (1) al declarar con lugar la petición de *coram nobis*, ya que en Puerto Rico no existe dicho remedio; (2) al resolver que el acusado no pudo acogerse a los beneficios de una moción de nuevo juicio o al recurso de apelación; y (3) al resolver que los hechos en que basó su moción el acusado—fraude—fueron descubiertos después de dictada la sentencia y que a pesar de sus diligencias, no los pudo averiguar antes del juicio y de la sentencia.

En su alegato el fiscal ha enfocado y discutido este caso exclusivamente bajo la teoría de que en Puerto Rico no existe el remedio conocido en el derecho común bajo el nombre de auto de *coram nobis* y que aun en aquellas jurisdicciones en que se permite, no procedería bajo las circunstancias concurrentes, ya que el apelado tenía un remedio en ley, es decir, haber solicitado la concesión de un nuevo juicio o el haber apelado de la sentencia.

La corte inferior no resolvió que existiera en Puerto Rico el auto de *coram nobis*. Ya hemos visto la forma en

---

(1) En su inciso 5, dicho artículo dispone lo siguiente:

"El ministerio público puede establecer apelación:

". . . . . . . .

"5. De una providencia dictada después de pronunciado el fallo, que afecte los derechos sustanciales del ministerio público."

que decidió la excepción previa del fiscal y además, al resolver el caso en su fondo ratificó su resolución anterior diciendo:

"No creemos necesario entrar a considerar aquí la procedencia o no en esta jurisdicción del llamado auto de *Coram Nobis*, pues según dijimos anteriormente, hemos considerado e interpretado la solicitud del acusado como una moción para que se deje sin efecto una sentencia, que se alega fué obtenida mediante fraude y falsedad, hecho que se sostiene, el acusado no pudo averiguar antes del juicio y de la sentencia, a pesar de su diligencia."

De manera, pues, que lo que debemos determinar es si la corte inferior erró o no al resolver que, de acuerdo con los hechos específicos alegados y probados en relación con la solicitud del apelado, procedía dejar sin efecto la sentencia dictada en su contra en el caso de tentativa de violación. En igual forma consideró la Corte de Apelaciones de California una solicitud similar en el caso de *People* v. *Pérez*, 98 Pac. 870 (reconsideración denegada por la Corte Suprema), diciendo:

"Se sostiene por el apelado que no existe ningún procedimiento conocido en nuestra práctica como el auto de 'error *coram nobis*'; pero no tenemos que discutir esta fase técnica de la cuestión, pues consideramos que el procedimiento aquí es equivalente a una moción para que la corte deje sin efecto la sentencia y permita que el acusado retire su alegación de culpable por el fundamento de que fué obtenida por temor a la violencia. Que tal moción procede no tenemos duda. ..."

Se ha resuelto que el mismo remedio que concedía el "auto de error *coram nobis*" del derecho común puede obtenerse mediante una moción para dejar sin efecto una sentencia obtenida por fraude. *People* v. *Vernon*, 49 P.2d 326 (D.C.A. Cal., 1935.)

Aun cuando no dijimos cuál era el procedimiento a seguirse, ya en el caso de *Pueblo* v. *Méndez*, 67 D.P.R. 829, 834, indicamos que correspondía a la corte de distrito en primera instancia determinar si una sentencia se ha obtenido mediante fraude descubierto posteriormente ya que se-

ría dicha corte la defraudada, y citamos el caso de *Hazel-Atlas* v. *Hartford Co.*, 322 U. S. 238. Empero, al mismo tiempo hicimos la siguiente advertencia:

"Creemos propio indicar que aunque el acusado pudiera demostrar que la evidencia sobre la cual basa la imputación de fraude es recién descubierta, (²) de tratar él luego, en la corte de distrito, de impugnar esta sentencia por fraudulenta, su tarea será muy ímproba. El Juez Black indica en su opinión a la pág. 245-6, que el caso de *Hazel Atlas* 'no es sencillamente un caso de una sentencia obtenida con la ayuda de un testigo quien, a base de evidencia recién descubierta, *posiblemente pueda ser culpable de perjurio*. Aquí . . . encontramos un plan deliberadamente trazado y ejecutado con cuidado para defraudar, no solamente la Oficina de Patentes, si que también la Corte de Circuito de Apelaciones.' (Citas.) . . ." (Bastardillas nuestras.)

En la nota (2), la cual hemos omitido citar ahora, hicimos referencia a la prueba en que basaba el acusado en dicho caso su alegación de fraude y a continuación dijimos: "Independientemente de la cuestión de cuán material era este testimonio perjuro al punto aquí discutido, el acusado tendría que convencer a la corte de distrito de que no pudo haber descubierto esta evidencia mediante la diligencia razonable antes del juicio. . . ."

Hemos reconocido, pues, con ciertas limitaciones, el poder de las cortes para dejar sin efecto una sentencia obtenida por fraude y la cuestión se reduce a determinar (1) si el fraude a la corte inferior, que alega el apelado fué cometido, y a virtud del cual se obtuvo la sentencia condenatoria en su contra, es uno que justifica que dicha corte dejara sin efecto la sentencia, y (2) si el apelado demostró que no pudo conseguir la prueba demostrativa del fraude mediante la debida diligencia antes del juicio. Veamos los hechos del caso principal y la prueba que se presentó en apoyo de la solicitud del apelado.

---

(²) Tanto esta declaración jurada como el certificado del Dr. Montenegro que transcribimos en la nota (3) podrían posiblemente ser considerados como prueba de referencia pero, como hemos dicho, fueron admitidos sin oposición alguna.

La corte a quo sintetizó los primeros en esta forma:

"Antes de ir adelante, conviene hacer una breve reseña de los hechos por los cuales el acusado fué declarado convicto en este caso. En 12 de diciembre de 1949 se celebró ante esta Corte, ante jurado, el juicio que seguía El Pueblo de Puerto Rico contra Luis Gerena López, caso criminal número 11,367, y del cual hemos tomado conocimiento judicial, por un supuesto delito de Ataque para Cometer Violación, consistente, según la acusación, en que el referido acusado, allá en o por el día 25 de junio de 1949, y en Lares, ilegal, voluntaria y criminalmente trató de tener comercio carnal por medio de la fuerza y la violencia, sin el consentimiento de ella, con María Brunilda Soto, quien no era allí y entonces su mujer propia y la que opuso resistencia, evitando que el acusado realizara sus intenciones.

"…     .     .     .     .     .     .     .     .

"Consistió la prueba de cargo en dicho caso del testimonio del Dr. Ruperto Varela Canosa, quien declaró sobre el examen que practicara a la supuesta perjudicada el 27 de junio de 1949, y en el que la asistió de heriditas superficiales rectas, y de aparentes lesiones traumáticas en la vejiga; en el de la supuesta perjudicada María Brunilda Soto, quien declaró que entre 8 y 9 de la noche del 25 de junio de 1949 y en el pueblo de Lares, y cerca de su casa, el acusado, quien anteriormente cuando ella era soltera, había sido su novio, la agarró por los brazos, le tapó la boca, la cortó e intentó ultrajarla; y en el de Agenor Fernández Torres, esposo de la perjudicada, quien declaró que al él llegar a su casa, su esposa se desmayó; que le informó que habían tratado de ultrajarla; que él persiguió al supuesto asaltador, no logrando dar con él; y en una supuesta carta escrita por el acusado días después de ocurridos estos hechos, sin fecha, en la que éste aparentemente admite los mismos.

"La prueba de defensa consistió en la declaración de Miguel Vázquez Gueits, Teniente de la Policía de Lares, quien trajo consigo el Libro de Novedades del Cuartel de la Policía de Lares, del que aparecen dos asientos con la investigación del supuesto delito; y en el testimonio del acusado, quien negó enfáticamente los hechos imputádosle por la perjudicada, habiendo declarado que la noche de autos estuvo en un barrio rural de Lares en compañía del chófer Ángel Quiles y luego en un cine del pueblo de Lares, manifestando que le había sido imposible localizar a este testigo para traerlo al Tribunal, por no residir éste ya en Lares

para la fecha del juicio, y quedando sometido el caso al jurado, luego de las instrucciones de la Corte."

Ya hemos dicho que el acusado fué convicto por el jurado y sentenciado por la corte.

La prueba que se presentó para sostener que la sentencia fué obtenida mediante fraude consistió, según hemos dicho anteriormente, en la declaración del señor Harry Stolberg, Inspector de Correos, prestada ante la corte inferior, en una declaración jurada prestada por María Brunilda Soto ante dicho inspector el 29 de diciembre de 1949 y en una certificación expedida por el Dr. José D. Montenegro el 31 de diciembre de 1949.

En síntesis, declaró el señor Stolberg que allá para julio de 1949 le escribió y fué a su oficina el señor Agenor Fernández, diciéndole que su esposa había recibido varias cartas obscenas y de extorsión; que sospechaba que quien las había mandado era un individuo que había atacado a su esposa para cometer violación; que él fué a Lares el 7 de julio y en el cuartel de la policía le dijo la esposa de Fernández, María Brunilda Soto, que la persona que había mandado las cartas era Gerena López, conocido por Güiche; que ella juró que tenía que ser él pues la había atacado a ella en dos ocasiones y había tenido que ir al hospital; que aquel día él tomó muestras de escritura de Gerena López (no dijo en qué forma) y aunque no es perito en documentos para él era claro, por su experiencia, que la letra de las cartas no era de Gerena López; que aquel día ella le dijo algo muy raro refiriéndose a Agenor, su esposo, al efecto de que Gerena López, mientras ella paseaba en la plaza con su esposo y sin que éste lo viera, le tiraba piropos, diciéndole ella al testigo "y mi esposo es un zángano y no hace nada". Que entonces Stolberg siguió la investigación pues la letra de las cartas era muy singular y designó a uno en el correo para que se fijara quién compraba sellos de un centavo, que son los que se usan para mandar cartas a personas en el mismo

pueblo, y también quién echaba cartas con la misma letra; que no fué muchos días después que recibió información de que María Brunilda Soto Fernández había comprado un sello de un centavo el día 11 por la tarde y al día siguiente 12 por la tarde ella entró al correo—hubo oposición a que continuara declarando por información—y luego dijo que como resultado de la investigación quedó convencido de que ella misma era quien echaba las cartas; que habló con el fiscal federal y cerró el caso porque de acuerdo con la evidencia que tenía, el destinatario mismo había echado las cartas al correo. Que luego supo que Gerena López había sido sentenciado y a su oficina vino una queja (no dijo de quién) de que parte de la evidencia para sentenciar a ese muchacho fueron cartas que él había echado en la casa o donde vivía ella; que habló con el fiscal Ponsa Feliú y le ofreció abrir el caso y entonces el 29 de diciembre de 1949 llamó a María Brunilda Soto a su oficina y le informó de la evidencia que él tenía al efecto de que había sido ella misma la que había echado las cartas en el correo de Lares; que ella lo admitió y prestó una declaración; que ella estaba tranquila y declaró voluntariamente, sin amenazas y en forma serena. Dicha declaración fué admitida, sin oposición del fiscal,([2]) y dice así:

"*Affidavit*.—Mary Soto de Fernández, debidamente jurada, declara: Que he sido advertida de mis derechos a declarar o abstenerme a declarar. Entiendo que cualquier declaración puede ser usada en mi contra. Yo voluntariamente quiero decir lo siguiente: Que yo he escrito varias cartas obscenas dirigidas a mí misma, en Lares. Las he puesto en el correo de Lares en las fechas de junio 15 ó 16, junio 18, junio 22 y en julio 12. Yo hice aparecer en estas cartas que fueron escritas por un novio anterior llamado Güiche (Luis Gerena López) porque él me ha hecho mucho daño con mi marido. También yo acusé a él en

---

([2]) Tanto esta declaración jurada como el certificado del Dr. Montenegro que transcribimos en la nota (3) podrían posiblemente ser considerados como prueba de referencia pero, como hemos dicho, fueron admitidos sin oposición alguna.

la Corte de Distrito de Aguadilla como que él había hecho un acometimiento para cometer violación en mi persona, alegando que él me había arañado y golpeado el 25 de junio por la noche frente a mi casa. También escribí otras cartas anónimas que yo misma puse en mi casa alegando a mi esposo que Güiche las había puesto. Yo hice todo esto para dar celos a mi marido y para vengarme de Güiche que me había hecho mucho daño. En verdad Güiche, quien se llama Luis Gerena López, es inocente de cualquier ataque en mi persona. Yo misma me había hecho los rasguños con algo después de haberme tomado dos o tres cervezas.—He leído esta declaración y es la verdad y nada más que la verdad. Pido perdón y prometo que nunca más en el futuro voy a usar el correo para mandar cartas así y nunca más trataré de implicar a personas inocentes en asuntos de esta índole.— (firmado) María Brunilda Soto de Fernández.—Jurado y suscrito ante mí el día 29 de diciembre de 1949 en la ciudad de San Juan, P. R.—(firmado) H. Stolberg, Post Office Inspector.— (firmado) Miguel Feliciano Robles, P. I. Núm. 1523.—(firmado) Miguel A. de Jesús, P. O. Clerk.—(firmado) Alejandro Torres Orama.''

En la repregunta declaró el testigo Stolberg que se acusó a María Brunilda Soto de mandar cartas obscenas y de extorsión en el correo de Lares dirigidas a ella misma; que el proceso no se siguió porque se presentó un certificado médico alegando que ella estaba loca; ([3]) que él no examinó la carta que se presentó como prueba en el caso contra Gerena López pero sí varias cartas que le llevó el esposo de ella. El juez le muestra la carta a que hace referencia el fiscal y, después de compararla con las que él tenía, dijo repetidas veces que la letra en todas era idéntica. El juez hizo constar que él también "así lo ha observado".

---

([3]) Esta certificación, presentada por el fiscal, dice así:

"Gabinete Electro Médico.—Dr. José D. Montenegro, Calle San Justo No. 255, San Juan, 25, P. R.—Dr. José D. Montenegro, Médico Cirujano en ejercicio, certifica que la señora María Brunilda Soto está sufriendo de debilidad mental acompañada de alucinaciones y tendencias impulsivas. Esta enfermedad puede curarse con el aislamiento de la familia por un lapso de tiempo más o menos largo.—Para los fines que le conciernen le expido esta certificación en San Juan, a treinta y uno de diciembre de 1949. —José D. Montenegro, M. D., (firmado) José D. Montenegro."

Como consecuencia de su apreciación de esta prueba la corte inferior hizo constar lo siguiente:

"Del estudio y análisis de la evidencia ofrecida por las partes en el presente recurso, aparece establecido fuera de toda duda que los hechos que dieron base al proceso ventilado ante esta Corte contra el peticionario Luis Gerena López, son el producto de un fraude deliberadamente planeado y ejecutado por la supuesta perjudicada María Brunilda Soto, y. el Tribunal, luego de aquilatar toda la prueba, ha quedado plenamente convencido de que tales hechos son falsos y fraudulentos. Así mismo ha quedado convencido el Tribunal de que a pesar de su diligencia, el acusado no pudo averiguar los mismos antes del juicio ni de dictársele sentencia, por lo que no tuvo oportunidad alguna de plantearlo así ante esta Corte.

"No se trata aquí simplemente de una convicción obtenida a base de la declaración de una testigo perjura. Se trata por sobre todo de una convicción que fué obtenida a través de un plan deliberado y fraudulento de la supuesta perjudicada en el que ésta a base de perjurio y de falsedad, engañó a las autoridades policíacas y judiciales, y a un médico de la población de Lares, a su propio esposo, así como a este Tribunal."

■■ Arguye el fiscal que erró la corte al concluir que el apelado no pudo averiguar estos hechos antes de celebrarse el juicio y de dictarse sentencia en su contra y se funda para ello en el corto interrogatorio a que fué sometida María Brunilda Soto, como testigo de la defensa, y en el cual se le preguntó si ella había sido sorprendida en alguna ocasión echando al correo un anónimo para el acusado, contestando ella en la negativa. Sostiene el fiscal que esa pregunta demuestra que el acusado tenía conocimiento de los supuestos hechos fraudulentos que se habían investigado por el inspector de correos y si no tuvo conocimiento directo de esos hechos fué negligente al no averiguarlos. No estamos conformes. La pregunta que se hizo a la presunta perjudicada no tiene, a nuestro juicio, el alcance que quiere darle el fiscal ni presupone que él tuviera conocimiento de la investigación practicada por el señor Stolberg. Nada hay en la declaración de este testigo que tienda a demostrar tal conocimiento y

no vemos cómo pueda imputársele negligencia al apelado por no conocer la investigación federal. No fué hasta el 29 de diciembre de 1949, ya sentenciado el apelado desde el día 23, que María Brunilda Soto prestó su declaración jurada admitiendo el fraude que había cometido. No pudo, pues, este hecho servir de base al apelado para solicitar un nuevo juicio fundado en el descubrimiento de nueva prueba, ya que la tal moción hay que radicarla antes de dictarse sentencia. Artículo 304 del Código de Enjuiciamiento Criminal. Tampoco podía plantear la cuestión apelando de la sentencia pues los hechos que dieron lugar a la solicitud del acusado no podían surgir en forma alguna del récord en el caso. *Cf. Pueblo* v. *Méndez*, supra, nota (1), pág. 833.

■ ¿Constituyó fraude la actuación de María Brunilda Soto en tal forma que pueda sostenerse que no erró la corte inferior al dejar sin efecto la sentencia dictada en contra del apelado? Ésa, en verdad, es la cuestión primordial a resolver. No tenemos duda de que los hechos posteriormente descubiertos demuestran que la declaración de María Brunilda Soto en el juicio contra el apelado fué perjura. Ese hecho aislado, sin embargo, no podría servir de base para dejar sin efecto la sentencia, aun cuando el perjurio es considerado como un fraude a la corte. *Hazel-Atlas* v. *Hartford Co.*, supra; *Pueblo* v. *Méndez*, supra, y especialmente casos y autoridades citados a la pág. 834; Anotaciones en 33 A.L.R. 550 y 88 A.L.R. 1201. Y esto es así porque los procedimientos se harían interminables si se permitiera que se pasara sobre la credibilidad de los testigos en un caso alegándose, y aun probándose, posteriormente que sus declaraciones eran falsas. Aparte de que permitirlo podría prestarse también a un fraude a la corte por parte de testigos inescrupulosos, ya que no podría muchas veces determinarse en qué ocasión es que decían verdad.

Empero, en el caso de autos no fué la declaración perjura de María Brunilda Soto, considerada aisladamente, lo que

indujo a la corte inferior a resolver que la sentencia fué obtenida mediante fraude. Existe además prueba de que ella engañó a las autoridades judiciales preparando cartas y anónimos como si fueran escritos por el apelado, los cuales se enviaba a sí misma por correo y en los cuales aparecía el apelado admitiendo la comisión del delito y amenazándola, dando lugar a que toda esta prueba falsa sirviera de base al proceso instituído por el fiscal en contra del apelado. Fué, en verdad, un plan deliberadamente preparado y ejecutado con el propósito de vengarse del apelado y para obtener ese fin defraudó a la corte a quo.

Bajo todas las circunstancias concurrentes en el presente caso, y sin que se entienda que estamos estableciendo una regla general de que procede dejar sin efecto una sentencia por el mero hecho de que un testigo material confiese haber cometido perjurio—cf. Davis v. State, 161 N.E. 375, 382 (Ind., 1928)—consideramos que de no haber sido por todo ese plan, preparado y ejecutado por María Brunilda Soto, no se hubiera dictado el veredicto de culpabilidad en contra del acusado. En su consecuencia, no erró la corte inferior, en bien de la justicia, al dejar sin efecto la sentencia dictada en contra del apelado.

*Debe confirmarse la resolución apelada.*