EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ CRUZADO ORTIZ, acusado y apelante.

Número 10743.

*Sometido:* 24 de febrero de 1953. *Resuelto:* 15 de mayo de 1953.

*Santos P. Amadeo* y *Práxedes Álvarez Leandry,* abogados del
apelante; *Hon. Secretario de Justicia Interino Juan B. Fernández Badillo, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Rafael L. Ydrach Yordán, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El 5 de diciembre de 1951, el apelante José Cruzado Ortiz, radicó en el entonces Tribunal de Distrito de Puerto Rico, Sección de Mayagüez, un escrito intitulado Moción Solicitando la Anulación de Sentencias. El 29 de abril de 1952 la corte declaró sin lugar la moción y el promovente apeló de dicha resolución para ante este Tribunal.

Según surge de la referida moción y de los autos, los hechos envueltos son los siguientes:

En el mes de noviembre de 1950 el Fiscal del Tribunal de Distrito de Puerto Rico, Sección de Mayagüez (hoy Tribunal Superior), formuló cinco acusaciones de ataque para cometer asesinato, una acusación por infracción a la Ley de Explosivos (Ley núm. 67 de 1934, pág. 459), una acusación por portar armas prohibidas y una acusación por infracción a la Ley de Registro de Armas (Ley núm. 14 de 1936, pág. 129), contra el apelante más las siguientes personas: Ezequiel Lugo Morales, Eladio Sotomayor, José Antonio Vélez, Noé Marty, Domingo Lugo Ruiz, Rafael Méndez Negrón, José Angel Balett y Adán Montalvo.

El día 10 de enero de 1951 y luego de la lectura de las acusaciones por los delitos mencionados, el apelante José Cruzado Ortiz alegó ser inocente y solicitó juicio por sepa-

rado y por jurado. El día 14 de febrero de 1951, fecha señalada para la celebración de los casos de ataque para cometer asesinato contra el acusado José Cruzado Ortiz, éste renunció personalmente y a través de su abogado al juicio por jurado y solicitó que sus casos fueran vistos por tribunal de derecho. Por acuerdo entre los abogados defensores y los fiscales la corte suspendió la vista de dichos casos para el día 5 de marzo de 1951, al igual que los casos por portar armas, infracción a la Ley de Registro de Armas e infracción a la Ley de Explosivos. Ese mismo día, 14 de febrero de 1951, se procedió a juzgar conjuntamente y por jurado a los acusados Ezequiel Lugo Morales, Eladio Sotomayor, José Antonio Vélez, Noé Marty, Domingo Lugo Ruiz, Rafael Méndez Negrón, José Angel Balett y Adán Montalvo, por los delitos de ataque para cometer asesinato. Conforme al fallo emitido el 23 de febrero de 1951, cuatro de ellos fueron absueltos de los delitos imputádosles y los restantes declarados culpables.

El día 5 de marzo de 1951, fecha señalada para la celebración de los casos contra el acusado José Cruzado Ortiz, éste compareció personalmente y asistido por sus abogados: Tanto los fiscales como los abogados defensores del acusado José Cruzado Ortiz acordaron estipular y estipularon con la aprobación de la corte a quo someter a la decisión del tribunal los casos de ataque para cometer asesinato, infracciones a la Ley de Armas y Ley de Explosivos, por la prueba de cargo y de descargo que desfiló en el juicio contra los coacusados antes mencionados e incluyendo todo el contrainterrogatorio y examen redirecto de cada uno de los testigos tanto de defensa como de cargo. Luego de la anterior estipulación el juicio fué suspendido.

El día 23 de abril de 1951, al reanudarse la vista de los casos contra el acusado José Cruzado Ortiz y estando éste presente, luego de ratificarse la anterior estipulación, tanto el fiscal como uno de los abogados defensores informaron

oralmente ante el tribunal. Entonces la corte, a solicitud de la defensa, concedió hasta el 27 de abril de 1951 para que ésta radicara un memorándum de autoridades en relación con todos los delitos imputados al acusado.

El 30 de abril de 1951 la Corte, por voz del Hon. Juez Willis Ramos Vázquez, declaró culpable al acusado José Cruzado Ortiz de los cinco delitos de ataque para cometer asesinato y de las infracciones a la Ley de Armas y Ley de Explosivos. El acusado, a través de uno de sus abogados, renunció al término para dictar sentencia y fué condenado a sufrir una pena indeterminada de 1 a 12 años de presidio por cada uno de los delitos de ataque para cometer asesinato, tres años de cárcel por infracción a la Ley de Explosivos y dos años de cárcel por cada uno de los delitos de portar armas y no registro de armas.

De dichas sentencias el acusado apeló para ante este Tribunal pero sus apelaciones fueron desestimadas por abandono. (Véanse resoluciones de este Tribunal de fecha 5 de noviembre de 1951.)

Las razones que adujo el apelante en apoyo de su moción del 5 de diciembre de 1951, solicitando la anulación de dichas sentencias, quedan expresadas en el señalamiento de errores que alega fueron cometidos por el tribunal inferior.

Alega el apelante que:

La Corte erró al no resolver que la renuncia del derecho constitucional hecha por su abogado defensor a confrontarse con los testigos era nula e ineficaz por estar en conflicto con el Inciso 1, Artículo 2 de la Ley Orgánica de Puerto Rico y con los artículos 2, 5, y 11, inciso 4 del Código de Enjuiciamiento Criminal de Puerto Rico.

La Corte erró al no resolver que la estipulación del abogado del apelante sometiendo su caso por el testimonio que desfiló en el proceso contra los coacusados constituyó una violación de la Enmienda Sexta de la Constitución de los Estados Unidos; del Inciso 3 del Artículo 2 de la Ley Orgánica

de Puerto Rico, y de la sección 179 del Código de Enjuiciamiento Criminal de Puerto Rico que requieren que en todo delito *felony* el acusado deberá estar presente en todos los pasos del procedimiento.

■ ■ Antes de considerar los expresados señalamientos debemos resolver una cuestión previa levantada por el fiscal de este Tribunal en el sentido de que la moción radicada por el apelante participa de las características de una solicitud "coram nobis" y que, como tal, no aduce hechos suficientes para justificar tal remedio. Alega además el fiscal que las cuestiones levantadas por el promovente son materia de apelación y que al no levantarlas a su tiempo por dicha vía no puede utilizarlas ahora como fundamentos a su moción solicitando la anulación de las sentencias.

Ahora bien, una moción de anulación de sentencia puede participar de la naturaleza de un auto de "coram nobis". *Pueblo* v. *Gerena*, 72 D.P.R. 222; *Pueblo* v. *Soto*, 72 D.P.R. 412, 414; *Ponce* v. *F. Badrena e Hijo*, ante pág. 225. Sin embargo, el auto de "coram nobis" se basa en errores en cuanto a hechos que no surgen de los autos, o sea, extrínsecos al récord, cuyos hechos existían antes de dictarse sentencia, y que podían haber afectado la sentencia si la corte hubiera conocido la totalidad de los hechos, cuando tales hechos no fueron sometidos a la corte por razones que no determinaban culpa ni negligencia de parte del actor o que implicaban una equivocación explicable de su parte. *Ponce* v. *Badrena e Hijo*, supra, y casos allí citados relativos a procedimiento penal; *People* v. *Wilson*, 236 P.2d 9; *People* v. *Kretchmar*, 72 P.2d 243. Un remedio de la naturaleza de un auto de "coram nobis" puede ser adecuado cuando se ha privado a un acusado de derechos fundamentales, cuando la cuestión envuelva una previa determinación de hechos que no surgen de los autos originales. *People* v. *Weatherford*, 196 P.2d 832, 834; *People* v. *Egan*, 167 P.2d 766; *People* v. *Deutsch*, 60 P.2d 155; *People* v. *Schwarz*, 257 Pac. 71.

■■■ Las cuestiones planteadas en este caso son exclusivamente de derecho y los hechos en que se basan las alegaciones aparecen en los autos originales y no están en controversia. Por lo tanto, la moción formulada en el caso de autos no participa de la naturaleza de un auto de "coram nobis". Sin embargo, el nombre o la rúbrica que se le dé a una moción no es determinante de la naturaleza intrínseca de la moción, ni debe ser decisivo en cuanto a la manera en que la cuestión deba ser resuelta, desde el punto de vista de la realidad y de la justicia sustancial. (*Ponce* v. *Badrena e Hijo*, supra.) Nuestra filosofía judicial ya no admite el que se resuelvan los asuntos a base de la mística de las palabras formales. Si una sentencia lesiona los derechos constitucionales o fundamentales del acusado, o si se ha dictado sin jurisdicción, la validez de esa sentencia puede ser atacada directamente mediante moción, aún si la moción no participa de la naturaleza de un auto de "coram nobis". *Bojinoff* v. *People*, 85 N.E.2d 909, 912; *Hogan* v. *Court*, 68 N.E.2d 849, 851. Tal ataque directo mediante una moción tiene el mismo objetivo de un recurso de hábeas corpus cuando concurren las circunstancias ya indicadas. Precisamente un estatuto federal fué aprobado por el Congreso de los Estados Unidos en el año 1948 (28 U.S.C.A., sección 2255), al efecto de que si una sentencia es vulnerable a ataque por alguna razón que pueda justificar un auto de hábeas corpus, el acusado debe previamente recurrir al remedio de una moción de anulación de sentencia, no debiéndose conceder un auto de hábeas corpus a menos que se demuestre que el remedio mediante moción es inadecuado o inefectivo. *Birtch* v. *United States*, 173 F.2d 316, *certiorari* denegado en 337 U.S. 944. Ese estatuto no es aplicable en esta jurisdicción. Sin embargo, esa disposición estatutaria respondió a un estado jurisprudencial anterior en virtud del cual los tribunales habían resuelto, aun en ausencia de un estatuto específico a tal efecto, que un confinado tiene el poder

de recurrir, en la alternativa, a un hábeas corpus o a una moción de nulidad de sentencia, a los fines de invocar defectos jurisdiccionales o constitucionales de una sentencia. *Bowen* v. *United States*, 134 F.2d 845, 846; *Roberts* v. *United States*, 158 F.2d 150; *United States v. Steese*, 144 F.2d 439; *United States* v. *Runion*, 47 F. Supp. 594; *People* v. *Drysch*, 143 N.E. 100; *City of Chicago* v. *Nodeck*, 67 N.E. 39; *Commonwealth* v. *Downer*, 53 Atl.2d 897; *Mossew* v. *United States*, 266 Fed. 18; *Gilmore* v. *United States*, 124 F.2d 537; *Corrollo* v. *United States*, 151 F.2d 666 (sic); *Peeler* v. *United States*, 163 F.2d 823; *Thornburg* v. *United States*, 164 F.2d 37; *State* v. *O'Keith*, 15 P.2d 443; *Preston* v. *State*, 158 So. 135.

Era procedente, por lo tanto, la moción de anulación de sentencias presentada en el caso de autos. Tratándose de cuestiones constitucionales de carácter fundamental, el hecho de que las apelaciones contra las sentencias hubiesen sido desestimadas por este Tribunal, por abandono, no debe ser obstáculo ni impedimento a la consideración de tal moción.

■ Consideremos los méritos intrínsecos de la moción de anulación de sentencias. Como ya hemos indicado, al iniciarse la vista de los casos en el tribunal a quo, los abogados del acusado estipularon con el fiscal que los casos se someterían a la decisión de la corte, como tribunal de derecho, a base de la prueba que se había presentado en las vistas de otros casos contra otros coacusados. En presencia del acusado, quien no formuló objeción de clase alguna, los abogados del acusado, por lo tanto, renunciaron al derecho del acusado a confrontarse con, y repreguntar a, los testigos de cargo, y renunciaron a su derecho a presentar prueba de descargo. Tal y como ya hemos resuelto en el caso de *Pueblo* v. *Vargas*, ante pág. 144, esa renuncia fué válida. En el caso de *Vargas* se trataba de un delito menos grave (*misdeamenor*) mientras que el caso de autos envuelve delitos graves (*felonies*). No obstante ello, las mismas ra-

zones que determinan la validez de una renuncia al derecho de confrontación con los testigos de cargo, formulada por el abogado de un acusado, en casos *misdeamenors* son aplicables a delitos graves. En ambas categorías la repregunta de los testigos adversos es el objetivo esencial de la confrontación de esos testigos y en ambos casos el abogado debe tener la facultad de renunciar a tal repregunta. Debemos añadir que en el caso de autos el acusado estaba presente cuando se hizo la estipulación y él no presentó reparos de clase alguna. Su presencia y su pasividad al no formular protestas de clase alguna contra la estipulación constituían una realidad que no podemos ignorar. En el caso de *Jiménez* v. *Jones*, ante pág. 260, resolvimos que una alegación de culpabilidad debe ser hecha por el acusado personalmente, en vista del artículo 164 del Código de Enjuiciamiento Criminal, que así lo determina en forma específica y categórica. Pero también citamos casos al efecto de que, en ausencia de un requisito estatutario expreso, era suficiente la presencia esencial del acusado en el acto de la alegación, expresándose el acusado a través de su abogado, teniendo tal principio relevancia en esta época moderna en que los casos se resuelven a base de realidades y de justicia sustancial.

 En este caso no tenemos ante nos la transcripción de la evidencia practicada en los otros casos contra otros coacusados, en virtud de la cual se sometió el caso de autos a la decisión del tribunal sentenciador. Por lo tanto, no se nos ha colocado en condiciones de determinar si en esos otros casos no se observaron los elementos de un juicio justo e imparcial o si al estipular a base de la prueba presentada en esos otros casos se privó al acusado de un juicio justo e imparcial. Cf. *Wilson* v. *State*, 51 N.E.2d 848, 855; *People* v. *Nowak*, 24 N.E.2d 50, 51.

Uno de los objetivos del derecho de confrontación es el de evitar métodos secretos e inquisitoriales de enjuiciamiento. *Pueblo* v. *Vargas*, supra. No se nos ha demostrado

que ese propósito haya sido vulnerado en el caso de autos. Los abogados del acusado posiblemente formularon la estipulación aquí envuelta, en parte, como una cuestión de táctica, considerando especialmente que algunos de los coacusados habían sido absueltos a base de esa misma prueba. El acusado no protestó contra esa táctica, y él debe asumir las consecuencias de la actuación de sus abogados. Cf. *Díaz* v. *United States*, 223 U.S. 442, 451, 452.

Alega el apelante que la estipulación que él ahora impugna implica una infracción al artículo 179 del Código de Enjuiciamiento Criminal, que dispone que en todo proceso por un delito grave el acusado debe asistir al juicio en persona y al inciso 3, sección 2 de nuestra anterior Ley Orgánica que dispone que ninguna persona será considerada responsable de un delito sin el debido procedimiento de ley. Ello implica una alegación al efecto de que fué lesionado su derecho a confrontarse con los testigos de cargo, en vista de que él no estuvo presente en el juicio anterior. Ya hemos visto que ese derecho de confrontación fué renunciado válidamente. Además, como cuestión de hecho, el acusado estuvo presente en corte durante todas las etapas del procedimiento en el propio caso contra el acusado, o sea, en el caso de autos, incluyendo el momento en que, mediante estipulación, fué admitido en evidencia el expediente del proceso seguido contra los otros coacusados e incluyendo el momento en que se dictó sentencia contra el acusado.

*No habiéndose cometido error alguno en este caso, debe confirmarse la resolución apelada.*