EL PUEBLO DE PUERTO RICO, demandante y apelante, *v.* ALBERTO CÁDIZ COLÓN, acusado y apelado.

*Número:* 16996.  *Resuelto:* 10 de noviembre de 1961.

828

J. B. *Fernández Badillo, Procurador General de Puerto Rico* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados del apelante; *Héctor Martínez Colón,* abogado del apelado.

Sala integrada por el Juez Presidente señor Negrón Fernández, como Presidente de Sala, y los Jueces Asociados señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En el proceso que por el delito de asesinato en primer grado se siguió en la Sala de Ponce del Tribunal Superior contra Alberto Cádiz Colón, ([1]) el ministerio público presentó el testimonio de los testigos María Mercedes Pietri, José García Medina, Benigno Coti Torres y José Ramírez García. En enero de 1953 fue convicto de asesinato en segundo grado y sentenciado a una pena de diez a quince años de presidio. A los fines de resolver la única cuestión que se plantea en este recurso es indispensable resumir las declaraciones prestadas por los testigos mencionados.

*María Mercedes Pietri,* alias "La Colorá", declaró que conocía al acusado y a Petra Ramírez, "esposa" de éste, quie-

---

([1]) Otro coacusado, Ramón Cádiz Colón, fue absuelto por el jurado por instrucciones al efecto transmitidas por el juez de instancia. La petición de la defensa se fundó en insuficiencia de la prueba para conectar al mencionado coacusado con los hechos delictivos imputados.

nes vivían en la barriada Chichamba de Ponce; que el día 30 de julio de 1950 estuvo, en compañía de José Ramírez García, conocido por Pepe Coca-Cola, en la casa de la Ramírez, a comprar ron; que una vez les fue expendido el licor permanecieron en el patio de la casa; que presenció cuando Cádiz le pegó a Petra Ramírez, y que luego "la roció con gas y le pegó fuego"; que para ello tomó un "galón" de una estufa, que identificó a instancias del fiscal, y que la testigo había llevado al cuartel. En el contrainterrogatorio indicó que antes de ocurrir la agresión relatada, el acusado y la víctima habían discutido por "celos"; que después de la trifulca la casa fue cerrada y entonces "salió humo" y olía a carne quemada; que el acusado indicó que tomaría represalias contra quien le delatara; que descerrajaron la puerta y penetraron a la casa para auxiliar a la víctima, a quien envolvieron en una colcha que fue también identificada; que prestó testimonio ante el fiscal el mismo día de los hechos y su versión fue idéntica a la que ofrecía en el acto del juicio. *José García Medina* relató que presenció una pelea entre el acusado y la occisa, quienes habían ingerido licor; que no escuchó que el acusado le dirigiera amenazas a su mujer; y que no estuvo presente "cuando la quemaron". *Benigno Coti Torres*, policía estatal, narró ciertas manifestaciones que le hizo la víctima mientras estaba recluida en el Hospital Tricoche: "que los dos señores estos le habían pegado fuego; (q)ue el esposo le había dado un trompazo, una trompada, y ella cayó al suelo y él había cogido un galón de gas de la estufa y le roció gas y le pegó un fósforo"; que estas manifestaciones se las hizo en ausencia de los acusados, a la primera oportunidad que tuvo la víctima de hablar con el testigo en el curso de la investigación; que las únicas personas que habían hablado con la víctima eran los acusados; que, al detener a los acusados e informarles de las manifestaciones transcritas, estos permanecieron en silencio. El último testigo, *José Ramírez García*, aseveró que Cádiz y la Ramírez

tuvieron una "garata a las gaznatás"; que el acusado le pegó a la víctima y la lanzó al suelo; "entonces él cogió el galón de la estufa y se lo echó encima y le pegó un fósforo"; que también indicó que mataría a quien "vaya contra mí"; que declaró al fiscal en parecidos términos a los de su testimonio en el juicio.

En abril de 1954 Cádiz presentó al tribunal sentenciador una solicitud que denominó de *coram nobis* mediante la cual impugnó la sentencia dictada. Adujo como fundamentos la falta de una debida y adecuada asistencia del abogado y que la convicción se obtuvo mediante el testimonio de "testigos que no se encontraban en el sitio de los hechos". Se declaró sin lugar el recurso, y entre otras cosas, el tribunal indicó que el peticionario no había establecido que la prueba del Pueblo fuera fraudulenta.

Nuevamente, en octubre de 1955, el acusado solicitó se dejara sin efecto la sentencia a base de que el testimonio de los testigos María Mercedes Pietri y José Ramírez García era falso. Acompañó al efecto una declaración jurada de dicha testigo[2] y una copia de la declaración prestada en 1 de agosto de 1950 por Ramírez durante la investigación

---

[2] La referida declaración jurada lee como sigue:

"DECLARACION JURADA

"Yo, María Mercedes Pietri Ruiz, mayor de edad, soltera y vecina de Ponce, Puerto Rico, bajo juramento declaro:

"Que mi nombre es María Mercedes Pietri Ruiz, mayor de edad, soltera y vecina de Ponce, Puerto Rico.

"Que lo que vi y declaro lo hago libre y expontáneamente [sic] sin que nadie me obligue a ello, ni me amenace, ni me intimide.

"Que vivo en la Barriada de Ponce conocida por Chichamba.

"Que deseo declarar la verdad en relación con el caso de Alberto Cádiz quien está en Presidio cumpliendo una pena de 10 a 15 años.

"Que cuando el caso se vió, yo declaré que vi cuando Alberto Cádiz quemó a Petra Ramírez Letry.

"Que yo declaré eso debido a que Pepe Coca Cola me amenazó y me dijo que si yo decía la verdad el Fiscal me mandaba 5 años a Presidio.

"Que todo lo que yo declaré durante el juicio contra Alberto Cádiz fue todo mentira.

preliminar.(³)   Se presentó también una copia de la transcripción de los testimonios prestados durante el curso del juicio.

■ Sin la previa celebración de una audiencia, el tribunal de instancia anuló la sentencia dictada y ordenó la celebración de un nuevo juicio.   Señaló una fianza de $5,000 al acusado; fue prestada y el acusado se encuentra desde entonces en libertad provisional.   De la resolución dictada copiamos la parte pertinente que es necesario considerar para resolver sobre la impugnación de la misma interpuesta por el Pueblo dentro del presente recurso de apelación.(⁴)   Indicó que "(d)e los autos no aparece que el testigo José Ramírez García prestara otra declaración en adición a la suscrita el pri-

"Que toda la verdad en relación con la muerte de Petra Ramírez Letry es la siguiente:

"Que cuando Petra Ramírez Letry se pegó fuego Alberto Cádiz estaba fuera de la casa.

"Que nadie vio como ella se pegó fuego y que no es cierto que Alberto Cádiz le regara gas por el cuerpo y le pegara fuego.

"Que todo lo que estoy declarando en el día de hoy es la verdad y lo hago para limpiar mi conciencia."

(³) La declaración jurada del testigo Ramírez dice:

"DECLARACION JURADA DE JOSE RAMIREZ GARCIA

"En Ponce, Puerto Rico, a 1 de agosto de 1950, yo, José Ramírez García vecino de Ponce, Puerto Rico, con residencia en barrio Machuelo Arriba, de 26 años de edad, ante el fiscal comparezco y previa las advertencias de la ley que me han sido hechas, espontáneamente bajo juramento declaro:

"Que el domingo día 30 de julio de 1950, como a las once a doce de la mañana yo iba en una bicicleta con una compra y al pasar por el frente de la casa de Petra Ramírez Letry en la barriada Chichamba de Ponce, me encontré con un rebuluz [sic] de gente.   Que al no poder pasar con la bicicleta por el rebuluz [sic] de gente que había me paré y entonces la señora Petra Ramírez Letry quien venía con una sábana enliada por encima me llamó y me dijo: 'Mira mijo ayúdame a salir fuera a la calle.' Entonces, yo fui donde ella y le presté auxilio y la ayudé a sacar y me di cuenta de que en los pies tenía como una 'pelaura', y en una mano. Que no vi quien la quemó, y como fue que se quemó, ni tampoco vi por allí al que se dice que es marido de ella.   Que tampoco la señora Ramírez Letry no hizo manifestaciones en mi presencia en cuanto a quién fue el autor de esas quemaduras ni el origen de ellas.

"Que lo declarado es la verdad y nada más que la verdad."

(⁴) En *Pueblo* v. *Savala*, 78 D.P.R. 484 (1955) resolvimos que el Pueblo puede apelar de una resolución declarando con lugar la moción para dejar sin efecto la sentencia, dentro del término de 5 días.

mero de agosto de 1950",(⁵) y que evidentemente dicho testigo no informó lo cierto en el curso de la vista del caso al declarar que la versión que estaba dando sobre los hechos en el curso del proceso era la misma que le había dado al fiscal". Añadió que "(e)n este caso el testigo José Ramírez García no ha confesado que haya cometido un perjurio. La declaración de la testigo María Mercedes Pietri confesó que había cometido un perjurio. Si se toma aisladamente dicha declaración, esto por sí solo es insuficiente para que el tribunal anule una sentencia por el fundamento de que una sentencia fue obtenida mediante fraude. Tomado aisladamente el aparente perjurio cometido por José Ramírez García, también sería insuficiente para que se dejara sin efecto la sentencia. Pero el hecho de que este testigo haya admitido que cometió perjurio al declarar en este caso, unido a las circunstancias del perjurio aparente que existe por la contradicción clara que hay entre su versión dada en el curso del juicio y la declaración prestada ante el fiscal de distrito, de haber conocido el jurado estos hechos existe la posibilidad de que el jurado pudiera haber llegado a una conclusión distinta en relación con la inocencia o culpabilidad del acusado." Finalmente hizo descansar su anulación de la sentencia en el fraude cometido por el testigo Ramírez, que de haberse conocido el mismo al momento del juicio, este hecho hubiera influido necesariamente en el veredicto del jurado. En otras palabras, la resolución descartó completamente la retractación de la testigo Pietri, y se fundó exclusivamente en la del testigo José Ramírez García.

En *Pueblo* v. *Gerena*, 72 D.P.R. 222 (1951) admitimos la facultad de los tribunales, sujeto a ciertas limitaciones reconocidas, para dejar sin efecto sus sentencias cuando éstas se hubieren obtenido por fraude. Sin embargo, expresamente indicamos que la declaración teñida de perjurio de

_____

(⁵) Se refiere a la declaración prestada durante la investigación preliminar que copiamos en el escolio anterior.

un testigo no puede aisladamente servir de base para dejar sin efecto una sentencia. *Román* v. *Jefe Penitenciaría Estatal*, 78 D.P.R. 767, 770 (1955). Debe demostrarse algo más, o sea, un plan deliberadamente trazado y cuidadosamente ejecutado para defraudar al tribunal. Sostener lo contrario equivaldría a que la mera declaración posterior de un testigo en la cual se retracta del testimonio que prestó en el acto del juicio sería suficiente para lograr una nueva oportunidad a los fines de dilucidar la responsabilidad criminal del acusado. Es necesario igualmente que se alegue y se pruebe que la evidencia del fraude no pudo ser descubierta mediante diligencia razonable antes de dictarse la sentencia, *Pueblo* v. *Soto*, 73 D.P.R. 55 (1952); cf. *Pueblo* v. *Cruzado*, 74 D.P.R. 934 (1953).

▌ Los hechos de este caso no justifican que se dejara sin efecto la sentencia pues no se probó que mediara un plan deliberadamente trazado y cuidadosamente ejecutado para defraudar al tribunal. Todo cuanto revelan los autos es una probable inconsistencia entre la declaración del testigo Ramírez y la que ofreció el 1 de agosto de 1950 durante la investigación preliminar efectuada por el fiscal. Este hecho por sí solo no era suficiente para anular la sentencia. Además, surge claramente que el hecho básico en que se apoya la resolución impugnada—"no aparece que el testigo . . . prestara otra declaración en adición a la suscrita en 1 de agosto de 1950"—no es correcto, pues al solicitarse por el ministerio público la reconsideración de la resolución dejando sin efecto la sentencia se le acompañó copia de otra declaración prestada por dicho testigo en la reinvestigación del caso en octubre de 1950, fecha en que falleció la víctima, que es sustancialmente igual a la prestada en el proceso.(6) Inex-

---

(6) Dicha declaración lee como sigue:

"DECLARACION JURADA DE JOSE RAMIREZ GARCIA, prestada el día 16 de octubre de 1950, ante el HON. SALVADOR VERAY BARREDA, Fiscal Auxiliar del Tribunal de Distrito de Puerto Rico, Sección de Ponce, Puerto Rico.

"Fiscal: (Hon. Salvador Veray Barreda) ¿Su nombre es?

plicablemente el tribunal de instancia despachó la solicitud de reconsideración con un escueto "no ha lugar". En estas circunstancias el testigo Ramírez no mintió cuando indicó que su declaración en el juicio era en iguales términos a otra declaración prestada ante el fiscal. En el campo de la conjetura podemos decir que la declaración prestada en 1 de

Testigo: José Ramírez García.

Levante la mano derecha. ¿Ud. jura decir la verdad?

Sí, señor.

¿El día 30 de julio de 1950, Ud. estuvo en casa de Petra Ramírez Letry y Alberto Cádiz Colón?

Sí, señor.

¿A qué hora llegó Ud. allí?

La hora más o menos no sé Sr. Fiscal. Como de nueve a diez de la mañana más o menos.

¿Qué personas estuvieron allí cuando Ud. llegó?

Estaba este muchacho que yo le digo, Mayoral.

¿Ud. se refiere a Mayoral, un cabo de galera que está preso en la Cárcel de Distrito?

Testigo:

Sí, señor.

Fiscal: (Hon. Salvador Veray Barreda) ¿El estaba allí?

Sí, señor; cuando estaba Santos Colón.

¿Quién más estaba allí, Ramón Cádiz estaba allí?

Yo creo que sí.

Estaba Ramón Cádiz allí y él estaba con su esposa Rosa?

Yo creo que estaba.

¿Estaba o no estaba el hermano de Alberto Cádiz?

Sí, señor, estaba.

¿Y la mujer de Ramón estaba allí?

Estaba con él.

¿Petra estaba allí?

Sí, señor, estaba allí.

¿Y ésta la Bocao estaba allí?

Estaba allí.

¿Esta muchacha María Mercedes estaba allí?

Estaba allí.

¿Y por qué fue la discusión [sic] si hubo, entre Alberto Cádiz y Petra?

Bueno yo la discusión [sic] no sé porqué vino, Sr. Fiscal; no sé si era que él estaba celoso y que estaba en duda de ella o era que ella no lo quería . . .

¿Es o no es cierto que Alberto la celaba a ella de este muchacho Maguán, un cojo que iba allí a buscar comida de puerco?

Sí, señor.

agosto, a raíz de los hechos, en la cual Ramírez manifiesta que no "vio quien la quemó, ni tampoco vi por allí al que se dice que es marido de ella" probablemente obedeció a las amenazas que profirió el acusado contra cualquier persona que le delatara.

¿Por ese fue la discusión [*sic*] de Alberto y Petra?

Testigo:

Sí, señor.

Fiscal: (Hon. Salvador Veray Barreda) ¿Qué pasó en la discusión esa?

En la discusión yo me estaba dando un palito, cuando vi el rebuluz [*sic*] que hubo.

¿Alberto le dio primero con el puño?

Sí, señor; y la tiró de la cocina a la sala del primer puño que le dio; entonces después de eso fue que le tiró el gas y la prendió.

¿Y Ramón el hermano de Alberto atacaba a Petra?

No, señor, no le dio.

¿Pero él estaba allí en todo momento?

Estaba allí.

¿Y cómo fue eso que Alberto le echó gas y le prendió un fósforo?

En la garata que tuvieron, parece que ella quería irse de la casa y él cogió y le echó el gas.

¿De dónde cogió el gas ese él?

De la cocinita.

¿El tanque de la estufa se lo regó encima?

Sí, señor, entonces le puso el dedo en el chorrito en la boca del tanquecito y la rució (sic).

¿Y dónde estaba Petra cuando eso?

En la cocina.

¿Alguien la tenía aguantada cuando él le estaba echando el gas?

No, señor.

Fiscal: (Hon. Salvador Veray Barreda)

¿Ramón Cádiz no la estaba aguantando cuando él le rució [*sic*] el gas?

Testigo:

No, señor, porque cuando él le dio el primer puñetazo la tiró sobre la cocina.

¿Y después que él le regó el gas encima de ella que hizo él?

Después que le regó el gas le tiró un fósforo.

¿Y tan pronto que ella se prendió que hizo?

El se volvió loco tan pronto que había cogido fuego ella.

¿Y quiénes la auxiliaron allí?

Yo ayudé a quitarle la ropa y este muchacho que está preso aquí Mayoral; y esta muchacha que estaba aquí también.

¿La Bocao?

Sí, señor; y no recuerdo que más vecinos de la de allí.

En realidad el efecto en cuanto a la sentencia de la solicitud del acusado es lograr la celebración de un nuevo juicio. Considerada la moción presentada como una para que se conceda un nuevo juicio, la misma es improcedente, ya que no se funda en ninguna de las causas a que se refiere el artículo 303 del Código de Enjuiciamiento Criminal (34

¿Ud. conoce a Minga la rezadora?

De vista la conozco pero no la conozco de personalidad; me parece que ella era la que estaba rezando la noche esa de los rosarios.

¿Ud. está completamente seguro que Ramón Cádiz el hermano de Alberto estaba allí?

Sí, señor.

¿Y vio que el hermano le regó gas y le prendió el fósforo a Petra?

Sí, señor.

Fiscal: (Hon. Salvador Veray Barreda)

¿Esa gente han hablado con Ud. después que pasaron esos hechos?

Testigo:

No, señor.

¿Alguno de ellos lo ha amenazado a Ud. si hablaba algo de los hechos?

El que está preso dijo el que sirviera de testigo que cuando saliera que lo mataba.

¿Eso se lo dijo personalmente?

No, eso lo dijo en el barrio.

¿Esto lo dijo el mismo día?

Sí, señor, el mismo día.

¿Que el que declarara en contra le limpiaba el pico?

Sí, señor.

¿El estaba borracho?

Se había dado unos cuantos palitos. Yo le dije de Santos Colón este muchacho Mayoral; este Mayoral fue el que ayudó a quitarle la ropa para protegerla. Entonces, después de eso cogió el aparatito del gas y lo puso en la estufa otra vez.

¿Ud. jura que todo eso es la verdad y nada más que la verdad?

Sí, señor, Fiscal.

¿Y cuando este hombre cogió le regó el gas por encima Ud. no le dijo algo a él?

Yo no le dije nada porque yo estaba abajo y cuando él le dio el puñetazo y la tiró allá, que ella dijo 'no me vas a dejar', y que, entonces fue que le regó el gas.

Fiscal: (Hon. Salvador Veray Barreda)

¿Y él decía algo cuando le regó el gas?

Testigo:

No, señor, él estaba picado cuando eso; no dijo nada.

¿Ud. quiere declarar algo más que yo no le haya preguntado?

Yo no recuerdo más nada.

Pues, nada más."

L.P.R.A. sec. 883).(⁷)   *Pueblo v. Serbiá,* 78 D.P.R. 788 (1955); *Pueblo* v. *Reyes,* 76 D.P.R. 296 (1954); *Pueblo* v. *Vega,* 69 D.P.R. 406 (1948); cf. *Pueblo* v. *Ruiz,* 79 D.P.R. 957 (1957); *State* v. *Kicak,* 168 N.E.2d 768 (Ohio 1959). Véanse además, anotaciones en 158 A.L.R. 1062 (1945); 74 A.L.R. 757 (1931) y 33 A.L.R. 550 (1924).(⁸)

*Se revocará la resolución dictada por el Tribunal Superior, Sala de Ponce, en 27 de junio de 1957, y se devolverá el caso para ulteriores procedimientos.*

---

(⁷) En la moción radicada se aludió al descubrimiento de nueva prueba consistente en el testimonio de la enfermera María Cristina Fernández sobre una supuesta declaración en artículo mortis hecha por la víctima, y en el de Dominga ‘Chamorro y Dominga Torres en relación con manifestaciones exculpando al acusado que fueron hechas por la occisa contemporáneamente con la ocurrencia de los hechos.   La moción está huérfana de la alegación al efecto de que la prueba mencionada no pudo descubrirse con razonable diligencia antes del juicio, *Pueblo* v. *Beltrán,* 73 D.P.R. 509 (1952), ya que meramente se aduce que estos hechos no fueron sometidos a la consideración del tribunal "por razones que no determinan culpa ni negligencia por parte del acusado debido a que éste los desconocía". Cf. *Pueblo* v. *Díaz,* 5 D.P.R. 202 (1904); *Pueblo* v. *León,* 14 D.P.R. 251 (1908). Además, el efecto de estos testimonios sería meramente impugnar la declaración del agente Coti, *Pueblo* v. *Ortiz,* 68 D.P.R. 681 (1948) y no se acompañaron copias de las declaraciones juradas de estos testigos para que el tribunal pudiera determinar si las mismas eran suficientes para variar el veredicto rendido por el jurado, *Pueblo* v. *Ramírez,* 50 D.P.R. 234 (1936).

(⁸) En el procedimiento criminal federal se ha sostenido—en relación con mociones presentadas al amparo de la sección 2255 del Título 28 del Código de Estados Unidos para que se deje sin efecto una sentencia—que para que pueda prosperar la impugnación de una sentencia por fraude debe alegarse y demostrarse que la falsedad del testimonio era conocida por los agentes del gobierno o el fiscal, *Black* v. *United States,* 269 F.2d 38 (CA9, 1959), certiorari denegado 361 U.S. 938 (1960); *Elliot* v. *United States,* 268 F.2d 135 (CA8, 1959); *Kyle* v. *United States,* 266 F.2d 670 CA2, 1959, certiorari denegado 361 U.S. 870 (1959); cf. *In re Carvelo's Petition,* 352 P.2d 616 (Hawaii 1959), y que es igualmente improcedente cuando el acusado tenía conocimiento que se ofrecería tal testimonio y nada hizo para ventilar su falsedad en el acto del juicio, *Taylor* v. *United States,* 229 F.2d 826 (CA 8, 1956), certiorari denegado 351 U.S. 986 (1956).