REYES CORREA NEGRÓN, demandante y apelante, *v.* EL PUEBLO DE PUERTO RICO, demandado y apelado.

*Número:* O-73-5          *Resuelto:* 29 de octubre de 1975

288

*Reyes Correa Negrón, pro se; Benigno Alicea Alicea,* abogado del apelante-peticionario; *Miriam Naveira de Rodón, Procura-*

*dora General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El peticionario presentó al Tribunal Superior, Sala de Mayagüez, un escrito que tituló *"Habeas Corpus* y también Auto de Casación de *Coram Nobis",* en que solicitó que se anularan y se eliminaran de su "récord penal" varias sentencias dictadas por las antiguas Corte Municipal y Corte de Distrito de Mayagüez entre los años de 1938 y 1947, sentencias que el peticionario cumplió. Alegó que dichas sentencias eran nulas porque fueron dictadas siendo él menor de edad y mientras estaba bajo la jurisdicción de la antigua Corte para Niños, creada en virtud de la Ley Núm. 37 de 11 de marzo de 1915, y porque en algunos de los casos no tuvo asistencia de abogado. Alegó también que esas sentencias, dictadas por tribunales sin jurisdicción fueron tomadas en consideración como factor agravante para la imposición de una pena por la comisión de un delito federal, pena que el apelante está cumpliendo en la prisión federal de Leavenworth, Kansas.

El Tribunal Superior, Sala de Mayagüez, denegó de plano el recurso. Entendió que no procedía bajo la Regla 192.1 de Procedimiento Criminal; tampoco como *Habeas Corpus,* porque la solicitud no estaba dirigida a la persona que mantiene al peticionario bajo su custodia, y que si se expidiera el auto y se resolviera a favor del peticionario, dicha resolución no afectaría la legalidad de su detención; y lo denegó como auto de *coram nobis* por considerar que dicho recurso no puede ser utilizado para revivir controversias ya resueltas, no surgiendo *prima facie* violaciones a derechos constitucionales, y que de los récords del tribunal no surge que el apelante estuviera bajo la jurisdicción de la anterior Corte para Niños, no siendo el auto de *coram nobis* el procedimiento para dilucidar este tipo de controversias.

No conforme con esta resolución, el peticionario apeló para ante nos por su propio derecho. A solicitud de la Procuradora General requerimos de la Sociedad para Asistencia Legal que representara al peticionario. Tanto la Procuradora General como la Sociedad para Asistencia Legal oportunamente presentaron alegatos en que se discuten, en síntesis, dos cuestiones, a saber, la jurisdicción de este Tribunal para entender en el recurso y la procedencia de la anulación de las sentencias. Veamos ambas cuestiones.

■   Alega la Procuradora General que no tenemos jurisdicción por tratarse de un recurso de apelación interpuesto contra una resolución que denegó de plano la expedición del auto solicitado, fuera. el de *Habeas Corpus* o el de *Coram Nobis.* Ciertamente, la resolución que niega de plano la expedición del auto de *Habeas Corpus* no es apelable. *Pérez* v. *Delgado,* 80 D.P.R. 217 (1958); *Espinosa* v. *Ramírez, Alcaide de Cárcel,* 71 D.P.R. 10 (1950); *Ex parte López,* 15 D.P.R. 61 (1909); *Ex parte Delgado,* 12 D.P.R. 269 (1907). Tampoco es apelable la resolución que niega de plano el auto de *Coram Nobis.*[1] *Pueblo* v. *Nazario,* 53 D.P.R. 239, 243

------

[1] El recurso de *coram nobis* o *coram vobis* procede de la Common Law, y se aplica tanto a casos civiles como criminales. En *Ponce* v. *F. Badrena e Hijos, Inc.,* 74 D.P.R. 225, 252–253 (1952), se consideró que una moción "de reconsideración y de relevo" de sentencia "participa más bien de la naturaleza de un auto de 'coram nobis'." A base del Art. 295 del Código de Enjuiciamiento Civil, entonces vigente, que disponía que podía establecerse apelación de una providencia especial dictada después de una sentencia definitiva, se dijo en dicho caso que "una resolución en torno a una petición de auto de *coram nobis* constituye una providencia especial dictada después de sentencia y es apelable." Téngase presente que aun bajo las Reglas de Enjuiciamiento Civil de 1943 los trámites apelativos se seguían rigiendo por el Código de Enjuiciamiento Civil. *Collazo* v. *Puig y Abraham,* 70 D.P.R. 817 (1950).

Una situación similar sucedía en cuanto a asuntos criminales. El Código de Enjuiciamiento Criminal disponía en su Art. 347 que el acusado podía apelar "de una providencia dictada después del fallo que afecte los derechos sustanciales de la parte." De ahí la timidez con que en *Pueblo* v. *Nazario, supra,* págs. 242–243, no se dijera expresamente que la resolución

(1938). En repetidas ocasiones hemos señalado que el recurso de apelación, por ser de naturaleza estatutaria, no existe sin que haya un estatuto que lo establezca. *Concepción* v. *Junta de Contabilidad*, 80 D.P.R. 194 (1958); *Vázquez* v. *Rivera*, 69 D.P.R. 947 (1950); *Del Valle, Ex parte; Sánchez, etc., Opositores*, 69 D.P.R. 663 (1949); *Banuchi* v. *Corte*, 64 D.P.R. 112 (1944). El hábeas corpus está reglado en los Arts. 469 y siguientes del Código de Enjuiciamiento Criminal, 34 L.P.R.A. secs. 1741 a 1780, y sólo se permite la apelación "contra la providencia definitiva de un tribunal o juez al devolverse diligenciado el auto de hábeas corpus." Ley de 12 de marzo de 1903, 34 L.P.R.A. sec. 1773. El auto de *coram nobis*, así denominado no existe estatutariamente en esta jurisdicción. *Pueblo* v. *Gerena*, 72 D.P.R. 222 (1951). (²)

No obstante lo expresado, el hecho de que el peticionario, aquí apelante, no pueda valerse del recurso de apelación no debe impedir que determinemos si bajo cualquier otro procedimiento tendría derecho a acudir ante nos. Los tecnicismos no pueden impedir que atendamos el clamor de quien busca

denegando un auto de *coram nobis* no era apelable, limitándose a señalar que "la discreción" ejercitada para negarlo "no es revisable en apelación." La situación hoy día, tanto en lo civil como en lo criminal, es distinta. A partir de la Ley Núm. 115 de 26 de junio de 1958, y bajo las Reglas de Procedimiento Civil de 1958 y las Reglas de Procedimiento Criminal de 1963 que hoy rigen, el recurso de apelación para ante el Tribunal Supremo está limitado a "sentencias finales que dicte el Tribunal Superior en casos civiles en las cuales se plantea o resuelva una cuestión constitucional sustancial" y a "las sentencias finales dictadas en casos criminales originados en el Tribunal Superior." Esto último está atemperado por la Ley Núm. 11 de 8 de agosto de 1974 en virtud de la cual se permite la creación de sesiones o secciones apelativas del Tribunal Superior para entender en apelaciones de "sentencias finales dictadas en casos criminales originados en el Tribunal Superior y en juicio de novo ante el Tribunal Superior." 4 L.P.R.A. sec. 37, Supl. para 1975.

(²)La Regla 192 de Procedimiento Criminal tomada de la Ley de Enjuiciamiento Criminal española, concede un remedio de la naturaleza del *coram nobis*, pero limitado a la concesión de un nuevo juicio. Véase Cintrón García, *Las reglas de procedimiento criminal*, Revista de Derecho Puertorriqueño, Universidad Católica de Puerto Rico, Año III Núm. 9 (julio–septiembre 1963), pág. 74.

justicia. Cuando la ley no provee el camino, la justicia lo hace. Podemos considerar el recurso del peticionario ante nos como uno de *certiorari*, y así lo haremos.

▇▇▇ El tribunal de instancia concluyó correctamente que la petición que aquí nos ocupa no podía considerarse bajo la Regla 192.1 de Procedimiento Criminal, ni como un recurso de *habeas corpus*, ni como un *coram nobis*. No procedía bajo la Regla 192.1 porque el peticionario no se halla detenido en virtud de ninguna de las sentencias cuya validez ataca —las cuales ya fueron cumplidas por él—requisito que establece la citada regla. (³) Tampoco procedía el *habeas corpus*, por cuanto no se ataca la legalidad de su detención, ni se encuentra detenido en Puerto Rico ni bajo autoridad de funcionario alguno del Estado Libre Asociado. *Cf. Pueblo* v. *Tribunal Superior*, 98 D.P.R. 183, 184 (1969); *Reynolds* v. *Jefe Penitenciaría*, 90 D.P.R. 373, 381 (1964); *Díaz* v. *Campos*, 81 D.P.R. 1009 (1960). Recuérdese que el peticionario está en una prisión federal cumpliendo una sentencia de un tribunal federal.

▇▇▇ El auto de *coram nobis* tampoco procedía. Este recurso se dirige al tribunal que dictó una sentencia para que la deje sin efecto o la modifique, a base de hechos que no surgen de los autos, que existían antes de dictarse la sentencia y que no eran conocidos por la parte promovente ni por el tribunal ni podían ser descubiertos por el promovente mediante el ejercicio de razonables diligencias. Véanse *Pueblo* v. *Cruzado*, 74 D.P.R. 934, 939 (1953); *Ponce* v. *F. Badrena e Hijos, Inc.*, 74 D.P.R. 225, 253 (1952); *Pueblo* v. *Nazario*, supra. Véanse, además, Steven Anderson, *Coram Nobis*, 4 Idaho L. Rev. 89 (1967); Cole, Small, *State Post Conviction*

---

(³) La Regla 192.1 comienza diciendo: "Cualquier persona que se halle detenida en virtud de una sentencia dictada por cualquier Sala del Tribunal de Primera Instancia y que alegue el derecho a ser puesta en libertad . . . podrá presentar una moción a la sala del tribunal que impuso la sentencia para que anule, deje sin efecto o corrija la sentencia."

*Remedies and Federal Habeas Corpus*, 57 N.Y.U. L. Rev. 154 (1965). El recurso no procede, por tanto, para revisar cuestiones de Derecho. El ataque a una sentencia basado en falta de jurisdicción del tribunal que la dictó plantea una cuestión de Derecho. Por supuesto, el Derecho no existe en el vacío ni se aplica en abstracto. El Derecho se invoca en razón de los hechos que en cada caso se plantean.

▮ Por la razón de que el escrito del peticionario no fuera atendible bajo las denominaciones que él le dio— *"Habeas Corpus* y también auto de casación de *Coram Nobis"* —no debió desestimarse de plano sin investigar si la cuestión por él planteada era meritoria y podía ser resuelta bajo cualquier otro procedimiento. El nombre con que se designa un recurso no es determinante de su naturaleza, ni debe ser decisivo desde el punto de vista de la función de hacer justicia. *Lebrón Velázquez* v. *Romero Barceló*, 101 D.P.R. 915, 921 (1974), *Pueblo* v. *Cruzado*, supra, pág. 940. Como señalamos en *Cruz* v. *Director de la Lotería*, 94 D.P.R. 260, 264 (1967), ". . . los tribunales, cuando es necesario y de justicia hacerlo, hacemos caso omiso de los nombres o títulos mal puestos a los recursos y consideramos los mismos como corresponda."

▮ La solicitud del peticionario pudo ser considerada como lo que es: una solicitud para anular las sentencias. ¿Es necesario algún calificativo especial? Hubiese sido prudente notificarla al fiscal y, considerando que el peticionario se encuentra fuera de esta jurisdicción y ha comparecido por propio derecho, encargar su representación a la Sociedad para Asistencia Legal o designarle un abogado de oficio. El examen de los expedientes criminales del peticionario pudo ser suficiente para hurgar en los méritos de sus planteamientos y decidir como en justicia procediese.

Veamos los méritos del caso. La Ley Núm. 37 de 11 de marzo de 1915 creó una llamada Corte para Niños, y le confirió, en su primera sección, "jurisdicción original exclusiva

en todo caso de delincuencia y necesidad juveniles y causas a ellas conducentes." En su Sec. 8 disponía:

"Para los fines de esta Ley . . . la palabra 'niños' o 'niño' . . . comprenderá, a menos que de otro modo se consigne específicamente, cualquier niño en la Isla de Puerto Rico menor de diez y seis años de edad, o que una vez sujeto a la jurisdicción de una Corte para Niños por las disposiciones de esta Ley no haya llegado a la mayor edad. . . ."

De manera que, para los fines de dicha Ley, un niño dejaba de ser niño al cumplir diez y seis años de edad, a menos que antes de cumplir esa edad hubiese estado bajo la jurisdicción de la Corte para Niños. En este último caso, seguía siendo niño hasta cumplir los veintiún años. Dicho de otro modo, quien cometía un delito, cumplidos los dieciséis años, sin que hubiese estado antes bajo la jurisdicción de la Corte para Niños, era tratado como adulto. Si la Corte para Niños hubiere asumido jurisdicción como consecuencia de alguna falta cometida por el niño antes de haber cumplido dieciséis años, la conservaba con carácter exclusivo hasta que el niño alcanzase los veintiún años de edad.

El peticionario alega bajo juramento que nació el 15 de octubre de 1925. Ante nos han sido traídos diecinueve expedientes criminales de las antiguas Corte Municipal y Corte de Distrito de Mayagüez, en que se imputaron diversos delitos al peticionario.

El primero de dichos expedientes es el número 10680 de la antigua Corte de Distrito de Mayagüez, hoy Tribunal Superior. Se refiere a hechos ocurridos el 24 de septiembre de 1938, cuando el peticionario contaba apenas trece años de edad. Se le imputaron dos infracciones de la entonces vigente Ley de Armas—Ley Núm. 14 de 1936. Surge de este expediente que el 4 de noviembre de 1938, al llamarse el caso para juicio, el abogado del peticionario solicitó su archivo y sobreseimiento a base de la edad del peticionario. La Corte se negó

a archivar y en cambio ordenó el traslado del asunto a la Corte para Niños. No hay constancia de que la Corte para Niños tomara acción alguna. Por el contrario, obra en autos una certificación del Secretario del Tribunal Superior, Sala de Mayagüez, a los efectos de que "de los Libros de Actas de Menores Núm. 1 del 1915 al año 1934 y del Libro Núm. 2 del año 1934 al año 1947 no aparece récord alguno referente a que Reyes Correa Negrón fuera juzgado como un menor en el antiguo Tribunal de Distrito."

El traslado de la causa de la Corte de Distrito a la Corte para Niños no confirió jurisdicción a la Corte para Niños. La jurisdicción la tenía la Corte para Niños, con carácter de exclusividad, por ministerio de la Ley que creó dicha Corte. Empero, no podemos presumir que la Corte para Niños ejerció su jurisdicción, en ausencia de prueba en contrario. Véanse *Mirabal* v. *Delgado*, 82 D.P.R. 591, 595 (1961) y *Pueblo* v. *Rivera*, 71 D.P.R. 124 (1954).

Los expedientes que siguen al 10,680, en orden cronológico, son el 12,078, y el 12,079, ambos de la antigua Corte de Distrito de Mayagüez, hoy Tribunal Superior. En ellos se imputó al peticionario portación y posesión ilegal de armas de fuego, respectivamente, por hechos ocurridos el 25 de mayo de 1941, cuando el peticionario tenía quince años de edad. En ambas causas el peticionario hizo alegación de culpabilidad, alegación que fue aceptada por la Corte, que le sentenció a cumplir un mes y seis meses de cárcel, respectivamente, en forma consecutiva. Toda vez que el peticionario incurrió en la conducta delictuosa antes de alcanzar la edad de dieciséis años, dichas sentencias fueron dictadas sin que la Corte tuviera jurisdicción, y son nulas. Deben ser eliminadas del historial criminal del peticionario.

De los restantes dieciséis expedientes, diez se refieren a infracciones de ley cometidas por el peticionario después de cumplir dieciséis años y antes de alcanzar los veintiún años

de edad. (⁴) Como la Corte para Niños nunca asumió jurisdicción sobre él antes de alcanzar los dieciséis años de edad, era considerado como adulto bajo la ley entonces vigente. En todos dichos casos el peticionario tuvo asistencia de abogado, lo que así surge afirmativamente de los expedientes. No hay base alguna para alterar o dejar sin efecto las sentencias dictadas en ellos.

█ Quedan seis expedientes, todos por delitos cometidos cuando ya el peticionario había cumplido sus veintiún años de edad. En ellos se le imputó al peticionario acometimiento y agresión grave (dos casos), portar armas prohibidas (dos casos) y dos infracciones de la Ley Núm. 14 de 1936. En los dos primeros aparece que fue asistido de abogado. Los cuatro restantes, a diferencia de los otros, son expedientes incompletos que nada revelan sobre si el peticionario tuvo o no asistencia de abogado. Uno de ellos fue archivado a petición del fiscal debido a que el peticionario habría de ser juzgado en

(⁴) Son los siguientes: (1) 13,391, por ataque para cometer asesinato (delito grave), rebajado a ataque para cometer homicidio por un jurado, y sentenciado a dos años de presidio, apeló al Tribunal Supremo y desistió; (2) 13,392, por infracción de la Ley Núm. 14 de 1936, sentenciado a cumplir un mes de cárcel; (3) 13,399, por portar armas prohibidas, sentenciado a dos meses de cárcel; (4) 46,332, por acometimiento y agresión grave, condenado por la Corte Municipal de Mayagüez a seis meses de cárcel, apeló a la Corte de Distrito donde la pena le fue rebajada a un mes de cárcel; (5) 46,322 por acometimiento y agresión grave, condenado por la Corte Municipal a seis meses de cárcel y en apelación a la Corte de Distrito rebajada a un mes de cárcel; (6) 46,334 por acometimiento y agresión grave, condenado en la Corte Municipal a cuatro meses de cárcel, rebajados a un mes de cárcel en apelación a la Corte de Distrito; (7) 46,333 por acometimiento y agresión grave, condenado a seis meses de cárcel en la Corte Municipal, rebajados a un mes de cárcel en apelación a la Corte de Distrito; (8) 46,402 por alterar la paz, condenado a cincuenta días de cárcel, rebajados en apelación a veinte días por la Corte de Distrito; (9) 46,400 por alterar la paz, condenado a veinticinco días de cárcel en la Corte Municipal, apeló y la Corte de Distrito rebajó la pena a veinte días de cárcel; (10) 46,401 por alterar la paz, condenado a cincuenta días de cárcel por la Corte Municipal, rebajados en apelación a la Corte de Distrito a veinte días de cárcel. En la mayoría de estos casos el peticionario apeló al Tribunal Supremo y luego desistió o le fue desestimado el recurso.

la Corte de Distrito de los Estados Unidos para Puerto Rico por los mismos hechos que le eran imputados. Los demás no nos ayudan para hacer una determinación sobre el planteamiento del peticionario. Hemos expresado reiteradamente que se presume la corrección en los procedimientos e incumbe la carga de probar lo contrario a quien así lo alegue. *Pérez Aldarondo* v. *Tribunal Superior*, 102 D.P.R. 1 (1974); *Pueblo* v. *González Rivera*, 88 D.P.R. 205 (1963); *Escalera* v. *Armenteros*, 74 D.P.R. 11 (1952).

Se fortalece la presunción en este caso si consideramos que en su larga cadena de delincuencia el peticionario siempre estuvo asistido de competentes abogados. No parece lógico que cuando ya era mayor de veintiún años y tenía la experiencia de varios años de contacto con los procesos judiciales prescindiera de la debida asistencia de abogado. No puede pasarse por alto tampoco la posibilidad de que se sometiera a juicio sin abogado, previa renuncia a ello inteligentemente hecha. El peticionario demuestra en sus escritos ser persona inteligente y conocedora del Derecho. Se desestimará su petición en cuanto a dichos expedientes respecta.

*Se dictará sentencia para ordenar la anulación de las sentencias en las causas 12,078 y 12,079 de la antigua Corte de Distrito de Mayagüez, y para eliminarlas del historial criminal del peticionario. Se desestimará la petición en cuanto a los demás expedientes.*